RUFUS H. GROSVENOR, ADM'R FOR ROBT. L. BUNBURY v.
CLARK HARRISON, CHAS. F. HESS, ADDISON
P. COOK ET AL.

*Witness—Suspicious minuteness.*

A witness is apt to discredit himself by seeming to remember in minute
detail long past conversations between third persons on business mat-
ters in which he could have had no interest; especially if it appears
that these details had been casually suggested to him some time
before by a person interested in proving them to be true.

Appeal from Kalamazoo. (Mills, J.) June 4.—June 18.

FORECLOSURE bill. Defendant Harrison appeals. Reversed.

*Howard & Roos* for complainant.

*Powers & Oxenford* for appellant.

COOLEY, C. J. On March 26, 1866, Darius W. Field was
owner of a farm in the township of Brady, Kalamazoo county,
containing one hundred acres, and was in negotiation with
Charles F. Hess for the exchange of the farm for land in
Jackson county, for the purchase of which Hess held a con-
tract from Addison P. Cook. On this contract the sum of
$1769.16 was owing, and Field proposed in making the
exchange to have the Cook contract satisfied by Hess giving
him a bond for the sum owing upon it with collateral mort-
gage on the Brady farm. Neither Hess nor Cook knew the
Brady farm; but Field made very favorable representations
respecting it, which seem to have satisfied Hess, and the bond
and mortgage to Cook were executed before the negotiation
with him was had. The contemplated arrangement with
Cook was afterwards effected; but Cook would only take the
bond and mortgage on condition that he should find the
Brady farm to be as represented by Field. On investigation,
Cook claimed to have become satisfied that Field's represen-
tions were false and fraudulent, and he therefore refused to

recognize any interest in himself in the bond and mortgage, and refused to comply with a demand by Field that he should deed the Jackson land to him. The result was a suit by Field against Cook for the specific performance of the land contract; and this, after being in court several years, was decided in Cook's favor. After the litigation was ended, and on July 1, 1874, Cook made to Field a formal transfer, in the nature of a quit-claim, of the Hess bond and mortgage, and Field put the mortgage on record the same month. On September 25, 1877, Field assigned to Robert L. Bunbury, and on January 2, 1882, Bunbury commenced a foreclosure.

Meantime the following conveyances of or affecting the Brady farm had been made:

August 17, 1866, Hess conveyed it to Matthias W. Van Tassel.

October 1, 1866, Van Tassel sold to James Albro. Albro gave back two mortgages, one for one thousand dollars, and the other for six hundred dollars. These mortgages were assigned to the partnership of Kellogg & Holtenhouse, November 20, 1866, and by them to William H. Rice, November 27, 1866, and by Rice to the defendant Harrison, March 9, 1868. Harrison foreclosed the larger of the Albro mortgages, and the foreclosure became absolute September 13, 1870, and the deed to him on the foreclosure was recorded October 5, 1870. All the other conveyances, including the mortgages and assignments, were recorded at or about the time of their respective dates; and Clark Harrison, since the foreclosure deed was obtained, has been occupying, claiming and improving the land.

The suit now before us is the Bunbury foreclosure suit. Bunbury has deceased, and the suit is revived in the name of his administrator. Prima facie the mortgage in suit is cut off by the other conveyances, none of which recognized it, and every one of which, the defendant claims, was made and taken in entire ignorance of the existence of the mortgage from Hess to Cook. The complainant has consequently been under the necessity of taking upon himself the burden of showing that Van Tassel and the several parties claiming

through and under the deed of Hess to him had notice of the unrecorded mortgage from Hess to Cook at the time of acquiring their respective interests, and were not therefore, as against that mortgage, purchasers or mortgagees in good faith.

There is some evidence of such notice in every case, and there is also some evidence to the contrary in every case. It is obvious from what appears that the several instruments now assailed were received, and the consideration paid therefor, either in ignorance of the Hess mortgage or in disregard of it; for no inadequacy of price is shown in any instance; but complainant suggests, by way of accounting for this, that the parties, though they knew of the mortgage, supposed it to be wholly invalid because not recorded. This, though wholly improbable, is not impossible, and the evidence of positive notice must therefore be considered.

A suspicious fact, apparent on the most cursory examination of the record, is that Field has all the time been the active man in this suit in looking after the complainant's interests and in procuring witnesses, and yet he gives evidence of having personally become aware of nearly every intended conveyance, and of having personally given notice of the unrecorded mortgage. And where he did not give notice in advance, he testifies to admissions of notice as being made to himself. Now as he was not at the time claiming any interest in the Hess mortgage, but was repudiating any such interest, and may well be supposed to have felt no great desire to protect the interest of Cook, who was charging him with fraud, the fact of his being so invariably ready with his warning to purchasers, is only less suspicious than the fact that the purchasers were invariably so regardless of their interests as to pay no heed to the warning.

But in the case of the transfer of the Albro mortgages to Kellogg & Holtenhouse there is something more than suspicion; it seems impossible to read the proofs put in by the complainant without being satisfied that the story of notice is manufactured for the occasion. Kellogg, who negotiated the purchase of the mortgages for the firm, and who was

examined as a witness concerning the transaction more than sixteen years afterwards, testified that he took the mortgages at their face value; that he cannot now recall the particulars of the transaction, but has no recollection of any notice of an outstanding unrecorded mortgage, and if he had had such notice, does not think he would have taken them. This evidence seems fair, candid and reasonable. It would scarcely be expected that one would remember all the particulars of such a transaction after such a lapse of time.

On the other hand, Field testifies that in 1866, at the lumber office of Kellogg & Holtenhouse, Kellogg asked him about his suit with Cook, and said he was talking of trading with Van Tassel for a mortgage on the Brady farm, and Field told him about the mortgage given by Hess to Cook, and that it was not recorded. This testimony was taken in June, 1879.

Field's testimony as to this transaction might well be considered fairly met and balanced by that of Kellogg; and in November, 1883, nearly a year after Kellogg had been examined, one Soosman was sworn in support of Field. He was thirty-two years of age when sworn, and he testified that some sixteen or seventeen years before he used to run a two-wheeled dray; that he once drew some lumber from Kellogg's lumber-yard for Field; that Field was there with him, and he heard a little of the conversation between Field and Kellogg. They were talking about a farm in Brady. There was a man by the name of Hess, they said, and Field told Kellogg there was a mortgage on it given by Hess that was unrecorded; that was the way the witness understood it. Kellogg was inquiring of Field about this farm; talked of buying it, but hadn't bought it. Field told him there was this unrecorded mortgage on it.

This vague and uncertain evidence, admittedly in part inaccurate, was that which was given on the direct examination. Now, when it is considered that Soosman at the time was but fifteen or sixteen years of age; that no reason is apparent why he should have noticed or taken any interest whatever in the conversation; and that, in all likelihood,

there have been from that day to this hundreds, if not thousands, of transactions occurring in his presence every year which would be more immediately interesting to him at the time, and more likely to recur in memory afterwards,—the fact of his remembering this little transaction between others, even to the name of the stranger who was mentioned, is very well calculated to excite suspicion, if not to compel downright incredulity.

But what the witness says on cross-examination shows very plainly why the facts were remembered, and gives important insight into this part of the case. " I think," the witness says, " it was a year ago Mr. Field spoke to me about this conversation. He asked me if I remembered anything about drawing lumber for him. I told him I did. He wanted to know what kind of lumber, and I told him I thought it was flooring. Then he wanted to know if I had any recollection of a conversation between him and Mr. Kellogg. He said they were talking about a farm, and Mr. Field said to Mr. Kellogg that there was an unrecorded mortgage, I believe. I did not remember the man's name, only Mr. Field asked me if I would remember the man's name if I should hear it. I think he called him Hess. He asked me if I thought that was the name they were talking about, and I said it sounded very much like it, as near as I could remember. I believe, then, I heard him say it was in the township of Brady, in the county of Kalamazoo."

It appears, then, that the extraordinary memory was not that of Soosman, but of Field. Field, being desirous to prove that a certain conversation occurred casually some sixteen years before, is able not only to recall it distinctly to his own mind, but also to remember the very boy who by chance happened at the time to be within hearing and may therefore have heard it. This, it must be admitted, is very much more surprising than that the casual bystander, after this lapse of time, should be impressed that he recalled such a conversation, after Field had told him it occurred in his presence, and given him all the particulars. It is, of course, possible that Soosman, who apparently is the sort of man

who might be used as a tool without being aware of it, has testified to what he was made to believe by Field were the facts, but the case is a transparent one of the manufacture of evidence. We do not in the least credit the story. Truthful witnesses do not have such extraordinary memories as we are asked to believe in here. The supposed protection of the recording laws would be a mockery if a record might be defeated by testimony such as this is.

As complainant's case fails at this point it is not necessary to consider the evidence of notice in the case of the other transfers. But it may be remarked that Hess testified that Field assisted him in making sale to Van Tassel, and advised him to keep silent about the mortgage to Cook, so that it might be made worthless to Cook, who, as Field then insisted, was the owner; and that this advice was followed, and Van Tassel kept in entire ignorance of the unrecorded mortgage. And there is much reason to believe this testimony is reliable.

The decree must be reversed and the bill dismissed with costs of both courts.

The other Justices concurred.