### In re GRAHAM'S ESTATE.
### GRAHAM v. GRAHAM et al.

No. 22706.   Nov. 27, 1934.

Sands & Campbell and W. F. Collins, for plaintiff in error.

J. C. Cornett, for defendants in error.

PER CURIAM. Pearl Graham appeals from a judgment rendered in the court below finding that she is not the surviving widow of Carl L. Graham, deceased, and that her written election, filed in this cause in the county court of Osage county, Okla., to take, as an heir and surviving widow of said Carl L. Graham, under the laws of descent and distribution of Oklahoma, should be, and is, denied on the ground that she is not said surviving widow; and sustaining the judgment of the county or probate court rendered on October 3, 1930, which court held the same as the trial court herein, and remitting the proceedings to said probate court of Osage county, Okla., for the purpose of carrying out the order of said court.

Carl L. Graham died testate on October 26, 1927. His will, dated February 8, 1927, was filed for probate in the county court of Osage county, November 12, 1927, and was thereafter duly admitted to probate as his last will and testament. The said Pearl Graham was mentioned as a devisee in said will, and was described as "F. Pearl Graham, my divorced wife." On June 27, 1928, she filed a written "election to take under the law," and renounced her right to take under the will. In said written election she set out that she is the surviving wife and widow of Carl L. Graham, deceased, and entitled to inherit from him under the laws of Oklahoma. That by virtue of the terms of his last will and testament, she was allowed and given $10,000 to be paid in life insurance in monthly payments only. That no life insurance existed or was in effect at the time of death out of which said sum could be paid, and that the bequest in said will does not operate to give her any funds or money whatsoever; and she renounces her right to take under the will and elects to take under the law. That the said Carl L. Graham attempted to secure a divorce, during his lifetime, from her, but same was illegal, null, and void, and that the court had no jurisdiction of her in said cause. That notwithstanding said pretended divorce, she and said Carl L. Graham resumed marital relationship and lived together thereafter as husband and wife, and that she is the surviving wife and widow of said Carl L. Graham and entitled to inherit in his estate. That no children were born to said marriage and that the property was accumulated during coverture and subsequent to their first marriage, and that there is no issue of the said Carl L. Graham. She then prays that the court enter an order renouncing her rights under the will and ordering that she be entitled to take under the laws of the state of Oklahoma.

The other heirs contested her election, and the county court, after a full hearing and trial of the issues thus raised, rendered judgment, on October 3, 1930, against her, denying her election and a right to take under the laws of descent and distribution for the reason that the court found that she was not the surviving wife and widow of said Carl L. Graham. The court found that they had been legally and absolutely divorced and were never thereafter married, either ceremonially or under the common-law. Thereafter she duly perfected her appeal to the district court of Osage county, Okla.

Her written election, together with the final report of the executor of the estate of said Carl L. Graham, deceased, and prayer in said report for distribution of the funds in the estate, constituted the entire issues and pleadings in said cause.

The case was tried in the district court of Osage county, beginning on the 12th day of February, 1931, and completed on the 13th day of February, 1931, without the intervention of a jury, and the court rendered judgment on February 13, 1931, as above set out.

The record discloses that said Pearl Graham and Carl L. Graham were legally married in the year 1910. That on December 30, 1924, he filed his petition for divorce against her in the district court of Osage county, Okla., and that her "general appearance and waiver of summons" was filed in said cause on December 31, 1924. She claims, but apparently not very seriously, that she never signed said waiver, or at least had no knowledge of signing it, but the court found against her on this point, and there was abundant evidence upon which to base his finding.

On about the same date the waiver was filed, she left Pawhuska and visited with her sister in Illinois. He obtained a decree of divorce on February 2, 1925. Said decree became final and binding on both parties. On August 7, 1925, she returned to Pawhuska, and she claims they lived together as man and wife until about February, 1926, at which time she left again for a visit with her sister and mother at Poteau, Okla. She then claims that she returned again in September, 1926, and claims that they cohabited and lived together as man and wife until about January 1, 1927, at which time she again left and went to Texas, where she resided until his death October 26, 1927.

The pleadings, briefs, and record as a whole present just two questions for this court to decide: First, whether or not the trial court erred in his judgment finding her not to be the surviving wife and widow of deceased, and denying her the right to elect as above shown; and, second, whether or not the court erred in admitting certain evidence objected to by her as incompetent and prejudicial.

As to the first question to decide, as heretofore suggested, there is abundant evidence for the court to decide that the parties had been divorced. The petition for divorce, the waiver, and the journal entry of judgment were all introduced in evidence. H. M. Gamble, an attorney at law, testified that Pearl Graham signed the waiver in his presence, and was fully advised as to what the instrument was, and there was other evidence upon which the court could properly conclude that she signed the waiver. It is not, therefore, necessary to discuss this feature of the case any further. It was then contended by the said Pearl Graham that, even though said divorce were legal and valid, a subsequent "common-law" marriage obtained between her and said Carl L. Graham. It was established beyond doubt that they did live together subsequent to the date of said divorce, and the trial court found that they occupied the same house and the same bed, and then and there resumed relations of cohabitation. According to the record this resumption on their part of living together occurred first on August 7, 1925, following the divorce on February 2, 1925. The court found, however, the pertinent fact that they never had any agreement to live together as husband and wife after the divorce was granted, and from all the facts in the case that there was no common-law marriage existing between the said parties. There was an abundant amount of evidence upon which the court could properly base this finding. Mr. Frank Hetzel, a witness for said Pearl Graham, testified, among other things, that he visited in the home of said parties on numerous occasions after said divorce had been granted, and to facts that would lead one to believe that said parties cohabited just as man and wife; but he also testified that about Saturday, before the death of Carl L. Graham on Wednesday, said deceased told witness, "that he was not satisfied with conditions as they were with him at that time, and that he was going to get his wife back and start his home over and settle down and try to do some good." The court found that the use of the word "wife" was a natural reference to one who had at one time been his lawfully wedded wife, and that the statement was an indication on the part of the deceased that he expected some time in the future to resume the marital state with his former wife. Witness Broscial Pierpont testified, among other things, that "both Carl L. Graham and Pearl Graham told her long after the time when plaintiff in error claims that the common-law marriage commenced, that they were divorced from one another," and also that, "in 1927 Pearl Graham told her in substance that she and Carl and some other parties were going down to Texas on the border and that she and Carl were going to remarry"; and again, that "she and Carl could have remarried; she could have married Carl one time in her life had it not been for her sister and a girl friend of hers visiting in her home." Witness, Mrs. A. L. Abbott, testified that in 1927 Pearl Graham told her that "if anyone ever married Carl she would kill them," and that "after she quit working for J. C. Penny & Co., she was going to Texas and she and Carl were going to remarry." The trial court

also considered as significant the use, by Carl L. Graham, in his will, of the term "my divorced wife," in referring to said Pearl Graham. These and a number of other facts and circumstances that were testified to by various witnesses were sufficient to justify the court in finding that there was never any common-law marriage existing between the parties.

"To constitute a valid common-law marriage, it is necessary that there should be an actual and mutual agreement to enter into a matrimonial relation **permanent** and **exclusive** of all others, between parties capable in law of making such a contract, consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties and obligations. And in an action where it is necessary to determine the issue whether such actual agreement was entered into, and whether there was a matrimonial relation maintained between them permanent and exclusive of all others, or whether they **maintained a continual** living together as man and wife, or openly assumed mutual duties and obligations towards each other as man and wife, and where there is a conflict in the testimony as to facts which go to show whether or not the parties actually maintained those **marital duties** and obligations required by the common-law, the judgment of the trial court upon such facts will be given the effect of a verdict of a jury upon conflicting testimony, and, if reasonably supported by the evidence, will not be disturbed in this court." Bothwell v. Way, 44 Okla. 555, 145 P. 350. See, also, Thompson v. Smith, 102 Okla. 150, 227 P. 77.

We have examined all of the authorities submitted by plaintiff in error, and certainly in view of all of them there must have been at least an intention, consent or agreement, which of course might be implied from this action and conduct, on the part of the parties to become man and wife followed by cohabitation as such, and, in view of the record, the trial court had before him competent evidence indicating that their intentions, consent and agreement, were to become man and wife at some future time by a regular ceremonial and formal marriage. Plaintiff in error herself does not testify to any agreement to enter into a common-law marriage, nor to any facts from which an intention or consent to so marry would necessarily be implied.

It is well settled in this state that, when the question of whether or not a common-law marriage exists is tried by the court, without the intervention of a jury, and where there is a conflict in the testimony as to facts which go to show whether or not the parties actually maintained those marital obligations and duties required by the common law, the judgment of the trial court upon such facts will be given the effect of a verdict of a jury upon conflicting testimony, and, if reasonably supported by the evidence, will not be disturbed in this court.

See Page v. Roddie, 92 Okla. 236, 218 P. 1092.

And even though it be admitted that the testimony of Pearl Graham, if all true, established a common-law marriage, which is doubtful, in any event there was such a conflict of testimony in this case, and the judgment of the trial court will therefore not be disturbed.

As to the second question before us, plaintiff in error contends "that the court committed error" in the introduction and exclusion of certain testimony which was material and prejudicial to the rights of Pearl Graham. Under this proposition of error, she contends that the trial court erred in permitting defendants in error to introduce testimony to show that Pearl Graham had collected considerable sums of insurance, by reason of the death of Carl L. Graham, and also in permitting them to introduce testimony concerning transactions and communications with Carl L. Graham, deceased, by interested parties. In view of the entire record, it is questionable whether or not this evidence was incompetent, but it is unnecessary to pass upon that question, inasmuch, as has heretofore been held by this court, in the case of Insurance Co. of North America v. Cochran, 59 Okla. 200, 159 P. 247:

"Where error is predicated upon the introduction of incompetent evidence, it must appear that the trial judge relied upon such incompetent evidence before the cause will be reversed; and where the conclusions of fact and of law fairly show that such evidence was not considered, its admission will be held not prejudicial."

The "finding of facts and conclusions of law," by the trial judge in this case, show that the court relied upon competent evidence and evidence other than that complained of, and that the evidence objected to was not considered at all. Also, in the case of Thompson v. Coker, 112 Okla. 268, 241 P. 486, this court said:

"In cases tried to the court, where complaint is made that incompetent evidence was admitted, unless it is shown and clearly pointed out wherein such incompetent evidence was clearly considered and used by the court in arriving at its judgment, no reversible error is presented, unless it can be said, upon the whole case, that there was not competent evidence in the record reasonably tending to support the judgment based thereon."

572

We are, therefore, bound to hold that it is not shown and clearly pointed out that the evidence complained of was clearly considered and used by the trial court in arriving at its judgment, but, on the contrary, said evidence was not considered by the court; and certainly it cannot be said, upon the whole case, that there was no competent evidence in the record reasonably tending to support the judgment based thereon; but, on the contrary, there was abundant competent evidence to support the judgment of the trial court.

See Tobin v. O'Brieter, 16 Okla. 500, 116 P. 439; Stone v. Spencer, 79 Okla. 85, 116 P. 439; Stone v. Spencer, 70 Okla. 85, 191 P. 197; English v. Gamble, 26 F. (2d) 28; Russell v. Lennox Furnace Co., 136 Okla. 249, 277 P. 915; Hartford Fire Ins. Co. v. Smith, 141 Okla. 90, 284 P. 624; Hoodenpyl v. Champion, 101 Okla. 239, 225 P. 160.

The judgment of the trial court is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys Toby Morris, Theodore Pruett, and J. H. Cline, in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Morris and approved by Mr. Pruett and Mr. Cline, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted.