### CREWS, Trustee, et al. v. STATE ex rel. BARNETT, Bank Com'r.

No. 25697.    Oct. 8, 1935.

Marcellus Priebe, for plaintiffs in error.

H. R. Christopher, for defendant in error.

PER CURIAM. On May 6, 1932, the Farmers State Bank, of Garber, Okla., borrowed from Ralph Crews, trustee, the sum of $5,100, and executed to him its promissory note in that amount, payable July 1, 1932. On March 1, 1933, the bank was closed by the Bank Commissioner as insolvent.

Plaintiffs in error here seek to compel the Bank Commissioner to surrender to them two notes which it is claimed were pledged as collateral at the time the loan was made, —one in the sum of $5,414.95, dated May 1, 1931, due July 12, 1931, from Chas. E. Gracy and Edye G. Gracy to the bank, on which there was a balance due on May 6, 1932, of $3,000; and one in the sum of $2,100, dated March 14, 1931, due September 14, 1931, from John D. Gibson to the bank. An attempt was made to claim additional collateral in the sum of $552.44, but there was absolutely no evidence to in any way sustain this claim, and it will not be further considered.

The evidence, oral and documentary, on both sides, was voluminous, the court allowing much latitude in the development of the facts. At the close of the trial the court denied the application and rendered judgment in favor of the Bank Commissioner.

The Farmers State Bank was organized some time prior to May 6, 1932, with 500 shares of stock, of which 400 were owned by Ralph Crews, Robert Crews, Amy Tresner, nee Crews, and Laura E. Crews, and 20 shares by Ralph Crews, as trustee for Ralph Crews, Robert Crews, Everett Crews, Mary Willis, nee Crews, and Amy Tresner, nee Crews, the six last-named being the cestuis que trustent in this proceeding.

At the time the bank closed, on March 1, 1933, the Gibson and Gracy notes above referred to were in the note case of the bank as assets of the bank; and the testimony is clear and convincing that these notes had been in the note case of the bank practically all, if not all, of the time from May 6, 1932, when the loan was made, until the bank closed. They were never shown to have been in the possession of Ralph Crews. His claim to them rests upon the following facts as testified to by him:

"Q. What I mean is, did they hand you these notes? A. Well, I don't know whether they exactly handed them to me. We went over the notes together. They had the notes up for collateral, and we accepted the ones that were put up as collateral. Q. Did you make a memorandum of the transaction at

the time? A. No, sir, not personally. Q. You didn't make any notation of the names or the amounts? A. No, sir. Q. And what became of the notes then, or your paper? A. Well, Mr. Moorehead (cashier) was keeping my books for me as trustee. They were put together in an envelope, and he took them and put them in a box, and presumably should have made a record of them. Q. And he put them in a box there in the bank? A. Yes, sir; he maintained a box there for my records. Q. And did you see Mr. Moorehead 'ut these papers in that box? A. I saw him like them and go in the vault with them. /. And did he put them in an envelope? A. Yes, sir. Q. And did he mark anything on the envelope that you saw? A. Well, I couldn't remember as to that. Q. Did you have access to that box, too? A. No, sir. Q. I believe you testified that you never saw the papers from that date until now. A. No, sir. Q. I mean the collateral notes. A. No, sir. Q. Did you ever have occasion to look into that box Mr. Moorehead had, after receiving those papers? A. No, sir; not until he delivered it to me. He delivered that a short time—about June or July of this year, I believe, and delivered these papers to me. Q. 1933? A. Yes. Q. Well, the Bank Commissioner took possession the 1st of March, 1933? A. Not of my papers. Q. What did Mr. Moorehead deliver to you. A. Mr. Moorehead delivered the books and all my papers to me,—well, I don't remember the exact date, but it was along in May or June or July of this year. Q. And among the papers and books he delivered to you, did he hand you the John D. Gibson and Gracy notes? A. No, sir. Q. When did you first make a claim for this collateral? A. Well, as I testified before, I don't remember of making a direct claim for the collateral. I made a claim for the payment of the note."

Robert Crews, president of the bank, and brother of Ralph Crews, testified to substantially the same facts.

The bookkeeper of the bank was called by defendant in error, and his evidence is to the effect that the Gibson and Gracy notes were always in the note case of the bank when he made his monthly reports; that he had been bookkeeper at that bank from 1925 until it closed, except from May 1, to July 1, 1931, and that he never at any time had any knowledge or notice that the Gibson and Gracy notes had been taken from the files or put up as collateral.

To constitute a valid pledge the res must be placed beyond the control of the pledgor, and unconditionally delivered to and put within the control and custody of the pledgee. Casey v. Cavaroc, 96 U. S. 467, 24 L. Ed. 779.

From a careful review of the entire record, we conclude that the burden of showing an actual pledge as collateral of the Gibson and Gracy notes has not been met by plaintiff in error.

During the trial statements were permitted by witnesses as to certain meetings held by what was termed a reorganization committee; some of these statements were immaterial. The trial court recognized this and stated at the time: "I'll let it go in for what it is worth, but I cannot see where it has any bearing on the case." The statements complained of tended to show that Ra ph Crews never made any claim at these meetings to this collateral. Whether he did or did not was immaterial.

Finding no prejudicial error, the judgment of the trial court is affirmed.

The Supreme Court acknowledges the aid of Attorneys T. H. DuBois, T. T. Varner, and Joseph W. Foster in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. DuBois and approved by Mr. Varner and Mr. Foster, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion, as modified, was adopted.

McNEILL, C. J., and RILEY, BUSBY, PHELPS, and CORN, JJ., concur.