## In re MILLER'S ESTATE.
## GEREN v. STORIE, Adm'r, et al.

No. 28180.    April 26, 1938.

M. L. Hankins, for plaintiff in error.

Willingham & Farris, for Robert Storie.

Ralph H. Schaller, for defendants in error William Alexander Miller, Mary Jane Miller Drake, Rebecca A. Smith, Samuel A. Smith, Lewis M. Smith, Jr., and Charles A. Smith.

GIBSON, J. This is a proceeding to determine heirship as incident to final distribution of a decedent's estate. Section 1358. O. S. 1931, 58 Okla. St. Ann. sec. 631.

Robert Storie, as administrator of the estate of James A. Miller, deceased, filed his final account and petition for distribution in the county court of Oklahoma county, whereupon the plaintiff in error, Ada M. Geren, intervened claiming to be the widow of deceased by virtue of a common-law marriage, and as such entitled to all his estate to the exclusion of his collateral kindred who are named herein as defendants in error along with said administrator. The intervener's petition was denied in county court, and that judgment was affirmed by the district court on appeal. The judgment of the district court is here for review. The parties in error will be referred to herein as plaintiff and defendants, respectively.

After plaintiff had lodged her appeal in district court, the county court, presuming to act pursuant to section 1081, O. S. 1931, 58 Okla. St. Ann. sec. 710, appointed counsel to represent the defendants, who were nonresidents and who had been suggested by the administrator as heirs of the deceased. On appeal the district court confirmed the appointment, or reappointed counsel.

This action of the trial court is assigned as error. The assignment is accompanied

with the argument that the court was not authorized to make such appointment where the question of heirship remains in dispute and undetermined, and in this connection it is urged that the court in appointing counsel for alleged heirs prejudged the question of heirship, thus manifesting an unfair attitude and prejudiced disposition toward plaintiff's claims sufficient to constitute an unfair trial.

Said section 1081 provides that the court, at or before the hearing of a petition of this character, may, "in its discretion. appoint some competent attorney at law to represent in all such proceedings the devisees, legatees, heirs, or creditors of the decedent, who are minors and have no general guardian in the county, or who are nonresidents of the state, and those interested, who, though they are neither such minors or nonresidents, are unrepresented." The section then provides for the allowance of counsel fee and the source of payment. The legality of such fee is not in question on this appeal. Neither the amount thereof nor the source of its payment is discussed. The assignment merely alleges that the action of the court in appointing an attorney for parties who were not admittedly heirs was sufficient to show that the judgment of the court on the question of heirship was actuated by bias and prejudice against the plaintiff. Plaintiff says the court is authorized to appoint counsel only for those parties who are admittedly heirs and entitled in any event to share in the estate. But plaintiff fails to suggest any substantial reason why the statute should be so restricted in its application. It grants discretionary powers; the court may "in its discretion" appoint counsel for "heirs.". If in making the appointment the court clearly abuses its discretion, such abuse might, under the particular circumstances of the case, constitute some indication of bias on the part of the court sufficient upon proper application to require his disqualification, which, if the court declined, and if not waived by the complaining party, might, upon proper presentation for review, constitute reversible error.

But plaintiff concedes that the court's appointment of counsel was proper except for the fact that the defendants were not admitted heirs. Upon that point we make no decision. Assuming, but not deciding, that the district court was unauthorized to make the appointment or to recognize counsel appointed in county court, we are aware of no decision where that act alone was held sufficient to warrant a reversal of the cause. Plaintiff cites no authority, and says there

is none. But plaintiff insists that the act of the court revealed bias and prejudice in favor of the defendants and against her.

Where the bias and prejudice of a trial judge first becomes evident in the rendition of judgment in a cause tried without a jury, and too late to permit of a request for disqualification as required by statute, the alleged bias and prejudice, if shown to have entered into the judgment to the apparent detriment of the unsuccessful party, may constitute grounds for reversal. See Taylor v. Harmon, 120 Okla. 145, 250 P. 887, 890. However, where a litigant, at any time before a cause tried to the court stands for judgment, is aware of the particular circumstances from which the bias and prejudice of the trial judge may be or become manifest, he should proceed under the statute (secs. 2911, 2915, O. S. 1931, 22 Okla. St. Ann. secs. 571, 575) to suggest the judge's disqualification. The procedure, under proper circumstances, may be by mandamus, or the party may object and save his exceptions to the overruling of his petition for disqualification and proceed with his cause, and thus save the question for review. In any event, the complaining party must proceed by application to the court as provided by statute, supra. If this is not done, the litigant is deemed to have waived the question (State v. Davenport, 125 Okla. 1, 256 P. 340), unless the circumstances are such that the demands of public policy would require disqualification. In such case the parties may not waive the disability. State v. Ledbetter, 156 Okla. 23, 9 P.2d 728.

In distinguishing matters of purely personal concern to the litigants and matters of public interest out of which bias and prejudice may arive, allowing waiver in the one instance, and prohibiting it in the other, the decisions are not entirely clear. We have on a prior occasion said, in effect, that disqualification by reason of personal interest of the judge may be waived (Mansfield, Sizer & Gardner v. Smith, 160 Okla. 298, 16 P.2d 1066); and other courts have held that prejudice of the judge is a matter of merely personal concern of the parties and may be waived as a ground of disqualification. 33 C. J. 1019. In view of these authorities we hold that the allegations of bias and prejudice in the instant case constituted circumstances which, if sufficient in the first instance to show bias and prejudice, were matters of purely personal concern to plaintiff, and that the matter has been waived by reason of plaintiff's failure to proceed by application suggesting the the trial judge's disqualification as required

by law. Sec. 2915, supra; Rourke v. Bevis, 171 Okla. 392, 42 P.2d 898. The question of bias and prejudice is not here for review.

Plaintiff's request for trial by jury was denied, and error thereon is assigned.

Argument in support of this assignment is based upon the theory that the action is one for the recovery of specific real property involving the one issue whether the plaintiff was the wife of the deceased, and was triable to a jury as a matter of right. Section 350, O. S. 1931, 12 Okla. St. Ann. sec. 556.

That statute does not authorize a trial by jury as a matter of right in every action where title to real property is involved. Harjo v. Chilcoat, 146 Okla. 62, 294 P. 119. We held there that the section "gives a right to trial by jury as to issues of fact arising in actions for the recovery of specific real property, and, where the gravamen of the action is other than one for relief as in ejectment at common law, or is for an equitable remedy, such as rescission, cancellation of deeds as for fraud, etc., the right to a jury is not given by statute." Here the gravamen of the action, or the substantial ground assigned for relief, is not the unlawful retention of real property; ejectment is not the relief sought. The judgment of the trial court in this case cannot carry with it the right to legal process in ejectment or demand the issuance of a writ of assistance. The decree will merely determine the issue of heirship, leaving the successful parties to their remedy to gain possession. Section 1359, O. S. 1931, 58 Okla. St. Ann. sec. 632.

Plaintiff seems to overlook the controlling statute on this question. Section 1412, O. S. 1931, 58 Okla. St. Ann. sec. 735, provides that in appeals of this character the district court "has the same power to decide the questions of fact which the county court or judge had, and it may, in its discretion, as in suits in chancery, and with like effect, make an order for the trial by jury of any or all the material questions of fact arising upon the issues between the parties." This provision is a substantial statement of the rule of law concerning the trial of actions purely equitable, where the right to jury trial as a matter of right is not recognized. See Tilman v. Tilman, 74 Okla. 259, 177 P. 558; Sam v. Sam, 172 Okla. 342, 45 P.2d 462. Said section 1412 is a part of the chapter on general probate procedure and applies to appeals on all matters arising on final distribution, which includes the determination of heirs of the estate of an intestate. The trial court did not err in denying jury trial.

The cases cited by plaintiff in support of her argument under this assignment are actions in ejectment or suits in equity originating in district court, or cases originating in county court involving the allowance of attorney fees for representing alleged heirs in an administration proceeding. None involve the question of procedure on final distribution of estates and therefore not in point here.

Plaintiff says the court erred in failing and refusing to make full findings of fact and conclusions of law after proper request therefor.

At the commencement of the trial the plaintiff requested special findings of fact and conclusions of law pursuant to her right as provided by section 374, O. S. 1931, 12 Okla. St. Ann. sec. 611. Upon the termination of all the evidence the court made somewhat extended comment upon the testimony of the different witnesses relative to the weight and sufficiency thereof upon the issue of marriage. Then the court, for the stated purpose of complying with the aforesaid request of the plaintiff, made the following purported special findings of fact and conclusions of law:

"The court finds that the relationship of husband and wife did not exist between the deceased, James A. Miller and Mrs. Ada Geren. The court further finds that the heirs of James A. Miller, deceased, are: Mary Jane Miller Drake, Rebecca A. Smith, Samuel H. Smith, Lewis M. Smith, Jr., and Charles A. Smith.

"The court concludes, as a matter of law, that Mrs. Geren is not entitled to participate as an heir in the estate of James A. Miller, deceased, but that the estate should be distributed to the heirs at law as the same are names (sic) in the decree of distribution heretofore issued in the county court. Now you may make your record."

Plaintiff saved exceptions in the following words:

"Comes now the intervener, Ada Geren, and objects and excepts to the findings of fact and conclusions of law made by the court, and also to the order and decree of distribution made by the county court. That's all there is. I will have to file a motion for a new trial."

It is charged that the foregoing findings and conclusions were insufficient to constitute special findings of fact and conclusions of law, and therefore constituted reversible error as a noncompliance with plaintiff's request. A number of decisions are cited in

support of this contention, and we find that the general rule as applied in this jurisdiction is as stated in the case of In re Riddle's Estate, 165 Okla. 248, 25 P.2d 763:

"Section 374, O. S. 1931 (556 C. O. S. 1921), requires the trial court, upon timely request by either of the parties, to make separate conclusions of fact and conclusions of law. Said statute is mandatory, and the failure of the trial court to comply with such request, when timely made, constitutes reversible error except where an examination of the entire record reveals that substantial justice has been done."

Under the circumstances in this case, we are not called upon to say whether the findings of fact and conclusions of law were sufficient to satisfy the statute. Plaintiff made timely request, but, if it may be said that there was a failure on the part of the court to comply, there were no exceptions saved to such failure. This omission deprives plaintiff of the right to a review of the alleged error. Johnson v. Johnston, 82 Okla. 259, 200 P. 204. Neither was the trial court's attention called to its alleged failure to make special findings by the motion for new trial. Id.; Stone v. Spencer, 79 Okla. 85, 191 P. 197. In the Johnson Case above, we held as follows:

"Where a request is made for special findings of fact and conclusions of law, and the court at the time judgment is rendered fails to make the special findings as requested, it is the duty of the party making the request to except to the failure of the court to make such findings, and to incorporate in the motion for new trial such failure."

And in the Spencer Case we held:

"While the right of a party to have the trial court make separate findings of fact and conclusions of law is a substantial right, the rule is well settled that, where the court attempts to make special findings upon the request of a party, and inadvertently fails to make special findings upon some particular matter in controversy, or makes such findings in too general terms, the court does not thereby commit substantial error, unless its attention is first called to the omission to find, or to the defective finding, and it then fails or refuses to correct the same."

By reason of those decisions it was necessary for the plaintiff, after the findings were made, to call the court's attention to its alleged omission by proper and specific exceptions at the time, and in the motion for new trial point in specific terms to such omission. In the instant case exceptions were saved to the court's findings as made, but not to its alleged failure to make specific

findings and conclusions; and the motion for new trial did not mention the omission and seek a new trial by reason thereof. The assignment will therefore receive no further consideration.

Plaintiff next contends that prejudicial error resulted from the trial judge's personal inspection of a letter written by one of the defendants, which letter was refused by the court after reading same. Counsel says the contents of the letter were never divulged to him, but claims that the letter, offered by defendants may have influenced the court to the undue prejudice of the plaintiff. Whatever the contents of the letter may have been, we must presume that the trial court was not influenced thereby, since it was not admitted in evidence. Plaintiff should have requested an inspection. We are unable to supply the omission, and must hold that the trial court was not without right to examine the letter and determine whether it should receive consideration. Had the letter been incompetent, and admitted over plaintiff's objection, in the absence of a showing that the court's judgment was influenced thereby to plaintiff's prejudice, there would be no reversible error. Russell v. Lennox Furnace Co., 136 Okla. 249, 277 P. 915. The trial court by sustaining objection to the introduction of the letter indicated that the contents thereof were not considered. In such case, where the court indicates that certain incompetent evidence before it is not considered, the admission of the evidence constitutes only harmless error. Crews v. State, 174 Okla. 128, 49 P.2d 761.

Plaintiff says the trial court erred in not suppressing the deposition of a defendant taken outside the state.

It is here charged that the attorneys for the administrator served notice to take the aforesaid deposition, and that for the reason, says counsel, the administrator is not an interested party in the proceeding to determine distributees, the notice was void. Section 295, O. S. 1931, 12 Okla. St. Ann. sec. 434; Nichols v. Wallace, 155 Okla. 231, 9 P.2d 430; Roach v. Coffee (Cal.) 14 P. 840.

Assuming, but not deciding, that the court should have refused the deposition for the reason assigned, it is not shown wherein the evidence contained therein was in any manner prejudicial to the asserted rights of the plaintiff. The testimony dealt entirely with the identification of consanguinean heirs of the intestate. That question was wholly unrelated and immaterial to the issue

of common-law marriage, which was, as admitted by all parties, the only issue in the controversy so far as plaintiff was concerned. Plaintiff has failed to point to any testimony of the deponent which in any way would have a tendency to influence the court's decision upon the issue of marriage; it is not shown and clearly pointed out where the evidence, if incompetent and wrongly received, was considered and applied by the court in arriving at its judgment. We here apply the rule stated in the case of Thompson v. Coker, 112 Okla. 268, 241 P. 486, as follows:

"In cases tried to the court, where complaint is made that incompetent evidence was admitted, unless it is shown and clearly pointed out wherein such incompetent evidence was clearly considered and used by the court in arriving at its judgment, no reversible error is presented, unless it can be said upon the whole case, that there was not competent evidence in the record reasonably tending to support the judgment based thereon."

There is no evidence here to support the judgment. No error is apparent.

Plaintiff complains of the action of the court in receiving in evidence "Polk's Oklahoma City Directory," wherein the following entry appears for the year 1928: "Geren, Ada M. (Wid.) h. 514 N. E. 7." This evidence was brought out on cross-examination of plaintiff and was apparently for the purpose of refuting any circumstance showing a reputed marriage relationship between plaintiff and the deceased. The entry purports to show that plaintiff was a widow during the years she is alleged to have been living with the intestate as his wife. Reputation that parties are living together as husband and wife constitutes circumstantial evidence that they are living together under a marriage contract (Horrigan v. Gibson, 87 Okla. 1, 206 P. 219), and general reputation in such case is founded upon hearsay evidence. 22 C. J. 211, sec. 170. Reputed marital relationship in such case is established by, or arises from, the declarations of relatives, acquaintances, and others coming in contact with the parties. Linsey v. Jefferson, 68 Okla. 156, 172 P. 641. Of course, reputation may tend to negative the existence of a marriage contract, and such reputation may be shown by the hearsay declarations of parties coming in contact with the alleged married couple. This for the reason that reputation which, with cohabitation, constitutes circumstantial evidence of a marriage contract must be uniform and general and not substantially contradicted or divided. 38 C. J. 1321-1324, sec. 98; Fender v. Segro, 41 Okla. 318, 137

P. 103. The entry in the city directory as above set out, though hearsay, constituted a declaration tending to divide or negative the reputation that a marriage contract existed, and was competent. We agree with the statement of the Supreme Court of California in the case of Quackenbush v. Swortfiguer, 68 P. 590, that "the repute which, with cohabitation, will be proof of marriage, must be uniform and general, and not divided and singular, and cannot be established except by the open, undisguised, and undoubted acts of the parties which are visible to outsiders."

Plaintiff next contends that the judgment of the trial court is not supported by the evidence.

This assignment requires a review of the record in order to determine where lies the preponderance or weight of the evidence as in cases of purely equitable cognizance. Section 1412, supra; Tilman v. Tilman, supra; In re Riddle's Estate, 165 Okla. 248, 25 P.2d 763; Sam v. Sam, supra, and cases there cited. If it is revealed that the judgment is against the clear weight of the evidence, this court may reverse the same and direct such decree as should have been entered in the first instance. It here becomes necessary to refer to the case of In re Graham's Estate, 169 Okla. 568, 37 P.2d 964, where the rule relating to the sufficiency of the evidence in a probate case was erroneously stated. The cause was one originating in county court on final distribution of an estate and involved a like issue as here presented. This court's decision, as reflected in the second syllabus, reads as follows:

"It is well settled, in this state that when the question of whether or not a common-law marriage exists is tried by the court, without the intervention of a jury, and where there is a conflict in the testimony as to the facts which go to show whether or not the parties actually maintained those marital obligations and duties required by the common law, the judgment of the trial court upon such facts will be given the effect of a verdict of a jury upon conflicting testimony, and, if reasonably supported by the evidence, will not be disturbed in this court."

In applying that rule the court followed the case of Page v. Roddie, 92 Okla. 236, 218 P. 1092, a law action in ejectment. This was an unfortunate circumstance, and the decision in the Graham Case is, to that extent, overruled.

Common-law marriages are recognized in this state. The first expression of this court upon the question, subsequent to the enactment of our present marriage laws is found

in the case In re Love's Estate, 42 Okla. 478, 142 P. 305, where the following rule is stated:

"A common-law marriage exists where competent parties agree to be and become immediately man and wife and pursuant thereto enter into and maintain thereafter the marriage relation."

This holding is followed in the case of In re Sanders' Estate, 67 Okla. 3, 168 P. 197; Hughes v. Kano, 68 Okla. 203, 173 P. 447; Baker v. Jack, 112 Okla. 142, 241 P. 478; Cavanaugh v. Cavanaugh, 135 Okla. 204, 275 P. 315. An agreement in praesenti to be husband and wife is the controlling factor in such case. Mudd v. Perry, 108 Okla. 168, 235 P. 479; Fisher v. Fisher, 116 Okla. 129, 243 P. 730; Tiuna v. Willmott, 162 Okla. 42, 19 P.2d 145.

The evidence shows that the plaintiff and James A. Miller were legally competent to enter into the alleged marriage contract. Plaintiff testified that on October 7, 1919, she and Miller went to the office of her attorney, A. J. Carlton, in the city of Shawnee, for the purpose of obtaining advice concerning the legality of an informal marriage, that said attorney advised them that a contract of marriage without license was legal, whereupon plaintiff and Miller joined hands and agreed thenceforth to be husband and wife; that one Jim Carlton, son of said attorney, was present and heard the conversation, and that he and his father congratulated the couple on their marriage and wished them success.

The said Jim Carlton, testifying by deposition, corroborated the foregoing testimony. Attorney Carlton died prior to the trial.

At the time of the above-mentioned episode plaintiff resided in Oklahoma City, where she operated a rooming house. Miller was rooming and boarding with her as a paid patron. He owned a farm near Shawnee, where he lived a portion of the time; plaintiff had previously resided in that neighborhood. According to the testimony of the witness Mrs. Wilkins, the couple came to her farm home near Shawnee in October, 1919, and announced that they had been married that day in Shawnee. They remained over-night and occupied the same bed. Witness had known the parties 36 years at the time of the trial.

Mrs. Monroe, testifying by deposition, said she had known plaintiff and Miller prior to the year 1919; that she lived in Pottawatomie county at the time of the alleged marriage; that in the summer of 1921 plaintiff and Miller visited her there, remained over-night, and occupied the same bed. She had visited plaintiff in Oklahoma City on a number of occasions, had observed the couple, knew they occupied the same room and generally demeaned themselves as husband and wife.

George Monroe, husband of the last-mentioned witness, testifying by deposition, corroborated her testimony.

Other witnesses who had lived in the rooming house or nearby testified that plaintiff and Miller apparently lived together as husband and wife.

On the other hand, we have the following evidence: The plaintiff had never been known by the name of Mrs. Miller, but was known in the neighborhood as Mrs. Geren. Plaintiff says this was in compliance with the agreement with Miller. Miller died at her home, the rooming house, and she made no move to arrange for his burial, and made no attempt to take charge of his personal effects. Mr. Storie, a personal friend of deceased, arranged everything, was appointed administrator, and plaintiff asserted no rights or claims to his estate except pay for his board and room and laundry. This claim was disallowed, but was later paid after judgment obtained therefor. Plaintiff asserted no claim as the wife of Miller until two years had elapsed after his death. Storie testifies that she specifically denied in his presence and in the presence of her adult daughter that she was the wife of deceased.

Plaintiff attempted to explain the foregoing actions, saying that she had thought all along that there was a will which would likely be found. She denied telling Storie that she was not the wife of Miller, and said that Miller had agreed to always pay board and room. The daughter did not testify.

It is also shown that Miller, during the alleged relationship, executed and acknowledged a number of real estate transfers as a single man.

According to the witness Storie, he and Miller had been close friends for 40 or 45 years. He had never heard Miller say that he was married. Storie visited him many times at plaintiff's house during his last illness, and never on those occasions or on prior visits had he seen any indication that plaintiff and Miller were married. Neither he nor any other witness seems to have noticed woman's wearing apparel or effects in Miller's room.

There are other witnesses, living in the same house with the parties, and in the

neighborhood, who testified that plaintiff and Miller always occupied separate rooms, and that there was no indication that the parties lived together or that they were married.

There is some evidence of cohabitation at plaintiff's rooming house; there is also some evidence to the contrary. The testimony that the parties occupied the same room or bed overnight when visiting the farms near Shawnee is of little or no value as circumstantial evidence of a marriage contract. Such acts do not constitute cohabitation, as that term is employed in connection with the question of informal marriage. With respect to such a marriage, the word implies and means a living or residing together of a man and woman ostensibly as husband and wife, and ordinarily carries with it the idea of a fixed residence. 11 C. J. 951, 952, and does not contemplate a casual sojourning together.

The weight of the evidence is against cohabitation, and negatives the fact of assumption and performance by the parties of any of the ordinary matrimonial duties and obligations. The plaintiff sought and obtained pay from Miller's estate for his board and room and laundry. This was a direct admission that such services were rendered, not as a wife, but as a proprietor of a business. This, together with her failure for so long a period to assert her marriage with Miller, constitutes a direct contradiction of plaintiff's testimony concerning the contract of marriage, allegedly consummated at Shawnee, sufficient to render that testimony improbable to the point of incredibility. The trial court observed the plaintiff on the stand, had an opportunity to note her demeanor, and, in the face of the evident inconsistencies and contradictions, was not convinced of the truthfulness of the testimony concerning the marriage contract. The trial court was justified in its conclusion, and we are in no position to doubt the correctness thereof. The testimony seems of little or no probative value.

The witness Carlton testified that he was present in his father's office at the time the alleged marriage contract was entered into. Referring to the conversation had between the parties on that occasion, he says he "heard part of it, some of it." He "didn't pay a great deal of attention to it, but overheard it." The witness was not a party to the conversation concerning the contract, but, without apparent effort, he recalls in rather positive and minute detail the exact words of the couple when they allegedly entered into the contract. His language is, referring to Miller and plaintiff, "He asked if she was willing to marry him that way, and she said she would. They took hands and he said, 'We declare ourselves man and wife.'"

The impression created upon the trial court by the testimony of the last-named witness is clearly reflected by the following observation in the record: "As far as the testimony of Mr. Carlton is concerned, I wish he hadn't been quite so explicit in his recollections after a period of 17 years. * * * It is a somewhat unnatural recollection." We share the trial court's feeling in this matter.

This witness was not personally interested in the particular transaction of which he testified; he was a casual observer or bystander, heard only part of the conversation, and attempts to testify concerning same after 17 years. These circumstances go to the credibility of the witness. He shows that he may not have fully understood the conversation referred to, and by reason of the infirmities of memory after 17 years, his testimony is of little weight. 70 C. J. 769, sec. 931.

The Supreme Court of Missouri, speaking of this type of evidence in the case of Whitely v. Babcock, 202 S. W. 1091, said:

"Testimony of a witness present at a conversation between grantor and the grantee under a deed of trust made many years before the trial is not entitled to very great weight, since the witness, not having been interested in the transaction, may not have fully understood it, and because of infirmities of memory."

In Grosvenor v. Harrison (Mich.) 19 N. W. 951, it was held that testimony as to words used and circumstances surrounding a casual conversation of 17 years before was incredible. There the court said: "Truthful witnesses do not have such extraordinary memories as we are asked to believe in here."

Testimony giving the precise words used in a conversation 15 years previously has been held to be "an almost incredible feat" (Midmer v. Midmer's Executors, 26 N. J. Eq. 299); and that minute recollection of conversation after many years "is suspicious" (Cooper v. Carlisle, 17 N. J. Eq. 525). See, also, 23 C. J. 29, 30, sec. 1765.

The trial court was justified in disregarding this testimony, although the same was unimpeached and uncontradicted by positive and direct evidence. Ordinarily, positive,

unimpeached and uncontradicted testimony should be given consideration, but if it is fraught with contradictions and is inherently improbable sufficient to satisfy the court or jury of its unreliability, it may be disregarded. Taggart v. Snipes, 174 Okla. 449, 50 P.2d 640. There we held:

"Where the positive testimony of the witness is uncontradicted and unimpeached, whether by other positive testimony or by circumstantial evidence, either intrinsic or extrinsic, and where it is not inherently improbable, either in itself or in connection with other circumstances, or where it does not contain contradictions in itself or with other evidence satisfying the court or jury of its falsity, it cannot be disregarded and must control the decision of the court or jury. But where the testimony in itself contains inherent improbabilities and contradictions which satisfy the court or jury as to its falsity, it may be disregarded or disbelieved."

The latter rule applies not alone to the witness Carlton, but to the plaintiff as well. Her subsequent actions, heretofore related, were so inconsistent with the idea of a marriage relationship that her testimony regarding the same became inherently improbable, and was therefore properly disregarded by the court.

We conclude that the judgment of the trial court was not against the clear weight of the evidence, and should therefore be affirmed. The record discloses no error.

Judgment affirmed.

BAYLESS, V. C. J., and RILEY, PHELPS, CORN, HURST, and DAVISON, JJ., concur. OSBORN, C. J., and WELCH, J., absent.