QUINTON v. WEBB et al.

No. 35180.    Sept. 16, 1952.

*248 P. 2d 586.*

John A. Goodall, Stilwell, for plaintiff in error.

Baker Wall and J. Fred Green, Sallisaw, for defendants in error.

GIBSON, J.   Mary Vann Quinton, in a dual capacity, on behalf of herself and as guardian of her two minor children, commenced this action to quiet title to certain lands in Sequoyah county. She will hereafter be referred to as plaintiff. The land involved herein was allotted to one Liza Ned, a duly enrolled Cherokee Indian, who died April 3, 1943, leaving a son, Levi Quinton, as her sole heir. Plaintiff alleged that she was the common-law wife of Levi Quinton, and that he was the father of her two minor children, for whom she sued as guardian, who were born July 24, 1941. Levi Quinton, while a soldier in the armed forces of the United States, was killed in action in Europe on July 22, 1944.

Following a trial, the court rendered judgment holding that plaintiff did not establish the common-law marriage alleged and awarded the estate of Levi

Quinton to Sequoyah Baldridge, Richard Baldridge, Dick Baldridge and Jess Baldridge, shown by the evidence to be the surviving heirs of Levi Quinton.

Plaintiff has prosecuted this appeal.

The sole question presented in the appeal is whether the trial court erred in holding that the evidence failed to establish a common-law marriage between Mary Vann and Levi Quinton.

The burden of proof of such relationship was upon the plaintiff, and we have many times stated the quantum of proof required to establish a common-law marriage in Oklahoma.

"The contestant predicated her right upon a claim of consensual or so-called common-law marriage between herself and the deceased, Isaac Trope, and she had the burden of establishing proof of the essentials necessary to create such a status. In this jurisdiction it is the well-established rule that a consensual or so-called common-law marriage is a status to which a mutual consent is essential, consent being the threshold by which the status is reached, but which status is not attained until there has been a holding out by the parties of themselves as husband and wife and a public assumption of the relation. See In re Love Estate, 42 Okla. 478, 142 P. 305, L.R.A. 1915E, 109; Bothwell v. Way, 44 Okla. 555, 145 P. 350; Sanders v. Sanders, 67 Okla. 3, 168 P. 197; Mudd v. Perry, 108 Okla. 168, 235 P. 479; Cordilla v. Taylor, supra; and In re Millers Estate, 182 Okla. 534, 78 P. 2d 819." In re Trope's Estate, 190 Okla. 453, 124 P. 2d 733.

"A common-law marriage exists where competent parties agree to be and become immediately man and wife, and pursuant thereto enter into and maintain the marriage relation.

"In a case of purely equitable cognizance, the Supreme Court will examine the entire record and weigh the evidence, but will not reverse the judgment of the trial court unless it is against the clear weight of the evidence." Cordilla v. Taylor, 181 Okla. 20, 72 P. 2d 375.

With the burden of proof cast upon the plaintiff, we note from our review of the record that much of the testimony is vague and uncertain. Many of the witnesses were Indians who testified through an interpreter. Aware of the illiteracy of certain of the witnesses and appreciative of the difficulties confronting the attorneys in eliciting testimony, the court was liberal in permitting all counsel to ask leading questions. In the very nature of the case it was difficult for a court to determine the facts. At the conclusion of the trial the court announced that he could not conscientiously find that a common-law marriage had been established.

Plaintiff produced four witnesses including herself and her mother. The testimony of two of the witnesses was of little substantial value. Dirtthrower Vann, plaintiff's cousin, testified that he saw Levi Quinton and plaintiff at the home of plaintiff's parents and on the highway several times, and that Levi lived with his mother. Jim Vann lived four or five miles from the home of plaintiff's parents. He said that he saw Levi and plaintiff at church but did not know if they were married or sweethearts or if they came to church together.

Plaintiff testified that in the spring of 1940 she lived with her parents, Hickory Vann and Annie Vann, in a thinly populated neighborhood near Bunch, Oklahoma. She told of an agreement between herself and Levi Quinton to live together as hereinafter outlined. They attended church together and stayed one night at her sister's home. Plaintiff became the mother of twin girls but the record does not reveal whether their births occurred before or after Levi joined the army. She testified that Levi promised to send her money after he got into the army and he did send money on three occasions. Two letters, written to plaintiff by Levi while in military service in June 1944, were introduced. In one he stated that he was enclosing money for the purchase of dresses and

shoes for the girls. In the other he said "if I ever get . . . back I will be there with my little girls", and asked for their pictures. One letter was addressed to "Miss Mary Vann", the other to "Mrs. Mary Vann". The letters were signed with no designation of himself as the husband of plaintiff. Since Levi's death plaintiff has married another man.

Annie Vann, plaintiff's mother, testified that Levi and plaintiff stayed at their home and that she considered them man and wife. Levi would stay a night or two at a time and sometimes a week, but not while Hickory Vann was at home. The family and Levi attended church together. Hickory Vann died while Levi was in the army.

The evidence intended to show that there was an agreement between plaintiff and Levi Quinton, sufficient to establish a contract of marriage at common law, is not clear and satisfactory. Plaintiff alone testified concerning the agreement. She said that some time in 1940 she agreed to live with Levi as his wife; that she told no person about the agreement except her mother; that they were intending to make their home with plaintiff's parents and such arrangement was satisfactory with her mother, and that it was probably a year later that they began living together. This was all of the evidence concerning the agreement, and it was established mainly by monosyllables in response to leading questions.

This court has held that a common-law marriage exists where competent parties agree to become immediately husband and wife, and pursuant thereto enter into and maintain the marital relation. Cordilla v. Taylor, supra. Under plaintiff's testimony this was not such a marriage. There was no immediate consummation of the marriage agreement, no execution of the alleged agreement, unless it be said that living together for a period of time, more than a year subsequent to the agreement, caused it to ripen into an executed oral agreement. But such a development does not constitute a marriage under the rule in the Cordilla case under which rule a present agreement must be presently fulfilled.

From this record we cannot say whether the contract was one for a present and immediate marriage or one for a marriage in the future. Plaintiff testified that they agreed to live together but that it was a year before they cohabited together.

"A distinction has been made between contracts per verba de praesenti, that is to say, contracts by which parties take each other in the present tense, implying that the marital relation is constituted immediately, and contracts per verba de futuro, implying that the parties will marry at a later date. A contract per verba de praesenti creates a valid marriage where all other essential elements are present, but generally the rule is otherwise with respect to a contract per verba de futuro." 55 C. J. S., § 20, p. 847.

There are jurisdictions in which it is held that if there is a valid agreement of marriage, in praesenti, cohabitation is not an essential element of a common-law marriage, while other courts hold that assumption of the marital relation is an essential element. Oklahoma has followed the latter rule. In re Trope's Estate, supra, and cases therein cited.

In any event, it can be said that open and notorious cohabitation of the parties is evidentiary of a marriage agreement, other elements being present, while lack of such open cohabitation of the parties may be evidence tending to discredit the alleged agreement, thus casting upon the alleging party a greater burden in the actual proof of such agreement.

Secret meetings or nights clandestinely spent together do not constitute cohabitation in the marital sense. Such occasional associations are meretricious and, though often repeated, do not constitute cohabitation as man and wife

as the term is used in considering common-law marriages. In the instant case it is significant that no witness, other than plaintiff and her mother, testified that there was any manner of cohabitation.

It is necessary that two parties must have joined in the alleged agreement. We have only the testimony of plaintiff with refererrnce thereto, as Levi Quinton is dead. There is no evidence in this record that he ever acknowledged having made such agreement. In many respects his conduct refutes any thought that he might have entered into the agreement outlined by plaintiff. His relatives, neighbors and friends testified that they never heard of his marriage to plaintiff or that he was the father of any children.

His uncle, Sequoyah Baldridge, who had practically reared Levi, had never heard of Levi living with Mary Vann, and although the witness was well acquainted in the neighborhood and with plaintiff's parents he had heard no person say that these two people were husband and wife. He was an interested witness but his credibility was for consideration of the court.

Joe Vann was Mary's uncle and had known Levi from childhood but he had never heard of any marriage with plaintiff or that Levi was the father of plaintiff's children. The witness lived about ten miles from the home of Hickory Vann, and said that he had been to plaintiff's home after Levi joined the army but no mention was made of Levi on that visit.

The evidence showed that when Levi went into military service he made no allotment of his army pay to plaintiff or her children; that he joined the army as a single man; that he made his mother beneficiary in his life insurance policy and his half sister alternate beneficiary. It was stipulated that when Levi was killed, his mother then being deceased, the insurance was paid to his half sister. The record shows that when Levi's mother died he ob-

tained a leave of absence and attended her funeral, but during his leave he did not visit plaintiff or her children. No witness testified that Levi Quinton ever held out plaintiff to be his wife or that he and plaintiff were accepted by their neighbors and friends as man and wife. There is no evidence that plaintiff ever openly assumed the name of Quinton, prior to the filing of her petition in this case.

The trial court found that the evidence failed to establish a common-law marriage.

In Lowe v. Hickory, 176 Okla. 426, 55 P. 2d 769, this court said:

"In checking the record in this case we are at once convinced of the wisdom of the rule which recognizes the fact that the trial judge, who sees the witnesses, observes their demeanor, and hears their testimony, is in better position to judge as to the true facts than the appellate court, making its review by an examination of the record."

The judgment of the trial court is correct.

Affirmed.

ARNOLD, C. J., HALLEY, V. C. J., and CORN, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.