Norman Kent McKEE, Plaintiff in Error,

v.

The STATE of Oklahoma, Defendant in Error.

A–14240.

Court of Criminal Appeals of Oklahoma.

Jan. 29, 1969.

Rehearing Denied April 9, 1969.

George & George, Ardmore, for plaintiff in error.

G. T. Blankenship, Atty. Gen., Penn Lerblance, Asst. Atty. Gen., for defendant in error.

BRETT, Presiding Judge.

Plaintiff in error, Norman Kent McKee, hereafter referred to as defendant, was convicted in the District Court of Carter County for the crime of second degree rape. He was tried by a jury which found him guilty and assessed his punishment at one year imprisonment in the state penitentiary. Judgment and sentence was passed on October 10, 1966, after which this appeal was perfected.

The facts briefly stated are: Defendant and the prosecuting witness became friends during June, 1965 and sometime later they commenced "going together steady." On October 12, 1965, Linda left a note for her parents which stated that she was leaving home to get married. At that time, defendant was twenty-one years old and Linda was fifteen years of age. They went to Dallas, Texas, where they rented a furnished apartment. Defendant found work and Linda was employed at the Regina Manufacturing Company in Dallas. Insofar as Linda had never obtained a Social Security Card, she applied for one in the name of Linda McKee. She testified that she and defendant held themselves out to be husband and wife to everyone but defendant's aunt and uncle, who lived at Dallas. She stated that defendant gave her a ring before they left for Dallas, but that they never had a legal ceremony of marriage performed, nor did they attempt to procure a marriage license in either Oklahoma or Texas, but did discuss the subject. It was made to appear, from the testimony of the prosecutrix, that the defendant was not certain whether or not his earlier divorce was final, so the marriage ceremony was not undertaken. She testified however, that she considered herself to be the wife of defendant, until they were separated by her parents. On the basis of common-law marriage defendant objected to the admissibility of the testimony of the prosecutrix. Defendant's objections were overruled, and he was allowed exceptions. After the jury's verdict was returned, defendant filed his motion for new trial, motion to delay sentencing, and motion in arrest of judgment, all of which were denied.

The assistant attorney general succinctly states the issue presented by this case is, as follows: whether the prosecutrix, Linda Gayle Smith, and the defendant entered into a common-law marriage which thereby made the prosecutrix incompetent to testify as to an alleged rape committed before such alleged marriage was entered into.

Defendant, in his reply brief, states that there being no material distinction between the law of Oklahoma and of Texas, as it pertains to common-law marriage, the attorney general's first proposition is of little consequence. The attorney general contends that the law of Oklahoma governs as to whether or not the parties entered into a common-law marriage. We agree that the requirements to establish a common-law marriage in Oklahoma and Texas are essentially the same.

We must therefore determine whether or not the parties entered into a common-law marriage, before we can answer the main issue at balance. It is the contention of the State that because the girl was below the age of 18 years, she was incapable of entering any kind of marriage because of nonage. The State makes reference, and cites, 43 Okl.St.Ann. § 1, which provides that marriage is a personal relation arising out of a civil contract to which the consent of parties, legally competent to contract, is necessary. The State also recites the following Section 3, which sets out the legal age for marriage to be twenty-one years for a male person, and eighteen years for a female person, otherwise consent of the parent or guardian of such person must be provided. The State recites in its brief, "Thus, the statutes providing who may marry parallel those defin-

ing capacity to contract and defining minors."

■ However, defendant points, in his reply brief, to 15 Okl.St.Ann. § 19, which provides that any minor under the age of eighteen, who enters a contract may disaffirm such contract, either before majority, or within one year thereafter. Consequently, defendant contends that consistent with the previous holdings of this Court and the Oklahoma State Supreme Court, marriage contracts like other civil contracts entered into by a minor are "voidable" not "void." To support his position defendant cites numerous Oklahoma cases, which have held such marriage contracts to be voidable. See: Hughes v. Kano, 68 Okl. 203, 173 P. 447; Hunt v. Hunt, 23 Okl. 490, 100 P. 541, 22 L.R.A.,N.S., 1202; Puntka v. Puntka, 174 Okl. 517, 50 P.2d 1092, and Stone v. Stone, 193 Okl. 458, 145 P.2d 212.

■ However, we observe the 1960 case of Daniels v. Mohon, Okl., 350 P.2d 932, 935, in which the Oklahoma Supreme Court recited the following:

"To constitute a valid common-law marriage there must be 'an actual and mutual agreement to enter into a matrimonial relation, permanent and exclusive of all others, between the parties *capable in law of making such a contract,* consummated by their cohabitation as man and wife, or their mutual assumption openly of marital duties and obligations'." (Emphasis added.)

■ We observe also in the 1952 case of Burdine v. Burdine, 206 Okl. 170, 242 P.2d 148, 150, the Oklahoma Supreme Court recited:

"Regardless of statute, common-law marriages have been upheld, marriage of persons under age have been held voidable, not void, and marriages in good faith, while under disability, have been held to ripen into legitimate relations when impediments are removed. Good faith, while not controlling, is always one of the principal elements to be considered."

■ As we see the proposition in this case, if the agreement of both parties had been fully understood between them—that they were married—that notwithstanding the age of the prosecutrix the marriage would have been merely voidable. But, when the full context of the testimony is considered it appears that defendant had certain reservations concerning whether or not he could marry the prosecutrix (legally or at common-law), because of the uncertain status of his previous divorce. Insofar as the prosecutrix was the only witness produced, and whose testimony defendant stood upon to prove the existence of common-law marriage, we are bound to accept her testimony on the subject. When the prosecutor asked the witness, "Did you all ever contact a court clerk, or any other proper person, to issue a marriage license?" the witness replied:

"He said—I don't know how true it is, but that he called this lawyer, or someone in Dallas—you see he told that two or three weeks after we had been down there that he couldn't marry me, that he didn't know for sure if he was still legally married or not. He never told me definitely that he wasn't. He presented the story, I think, to the Judge and the lawyer and several people down there, about us getting married, but he never married me."

Admittedly, as the cross-examination revealed, the witness had reference to a legal marriage ceremony; but notwithstanding —as the trial judge must have concluded when he made his ruling on defendant's objection—if defendant considered that he could not legally marry the prosecutrix, then he, no doubt, did not contemplate his marriage at common-law. When defendant's objection was overruled, the trial judge stated, "* * * I make the finding on the basis that the court finds from the testimony presented that there is no testimony of a contract to be a husband and wife *in praesenti as distinguished from one to get married in the future,* * * *." (Emphasis supplied.) (C.M.–70)

This conclusion also seems to be supported by the answer given to the prosecutor's question concerning what was said by defendant about the parties getting married in a legal ceremony, as they were returning to Springer, Oklahoma. She replied to the question, "That if the second child was not put in his name, he was to be legally divorced and we could get married." Such being the case, the first requirement of a common-law marriage, i. e., present mutual agreement between the parties, to undertake the marriage status, was not present.

As defense counsel aptly pointed out in his cross-examination of the prosecutrix, her actions and beliefs met the requirements for a common-law marriage including good faith. But defendant—from the record before the Court—apparently lacked both the present mutuality and consequently his present good faith appears doubtful. Defense counsel submitted an excellent brief, as well as a reply brief, to support defendant's position. But notwithstanding, the testimony offered in the trial court fails to support the position of common-law marriage. The defendant did not testify and the only witness offered was the prosecutrix.

We are therefore of the opinion that the trial judge did not commit error when he overruled defendant's objection to the testimony of the prosecutrix; and consequently in answer to the initial issue presented, on the basis of the record before the Court, the prosecutrix was legally competent to testify against defendant. From the testimony offered by the State, the showing is that defendant did not act and speak in a sufficiently positive manner to evidence his present intent to accomplish a common-law marriage.

We feel obligated to admonish defense counsel that he may desire to proceed under the provisions of 22 O.S.Supp.1965, § 994, within ten days of the final order of this Court. This admonition stems from the unusual circumstances which, no doubt, prompted the jury to inquire of the trial court if they could recommend a suspended sentence. After being properly advised by the trial court, the jury assessed the minimum sentence against defendant.

It is the opinion of the Court that the trial court did not commit the errors complained of, and the judgment and sentence of the District Court of Carter County should be, and the same is therefore, affirmed.

BUSSEY and NIX, JJ., concur.