Julie MUEGGENBORG, Appellee,

v.

Robert John WALLING a/k/a Robert John Wilkerson, Appellant.

No. 72253.

Supreme Court of Oklahoma.

July 15, 1992.

John C. Forbes and Leslie M. Forbes, Oklahoma City, for appellee.

M. Eileen Echols and David W. Echols, Oklahoma City, for appellant.

ALMA WILSON, Justice:

There are two issues in this case: whether the trial court erred in finding that the appellant failed to prove that the parties had entered into a common law marriage; and whether the trial court erred in placing

custody of two minor children with the appellee. A review of the evidence reveals that the trial court did not err in its judgment.

Although disputed, the record supports the following facts. In 1982, the appellant, Robert John Walling, then twenty-nine years old, moved the appellee, fifteen-year-old[1] Julie Long (now Mueggenborg), in with him. In 1983, Long gave birth to a son. About eighteen months later she moved out with her son in order to escape Walling's physical violence. Long was eighteen at the time she left. She became involved in a relationship with Johnny Knowland, and in March of 1985, after living with Knowland for six months, she bore a daughter. During this time, the son began living with Walling who lived with Long's brother and Sylvia Hames.

Walling began an affair with Long's mother. Her mother was caring for the Long's daughter and while Long was away from her mother's home, in August 1985, the mother gave her granddaughter to Walling. Long attempted to visit with her children, but Walling resisted, beating her and causing her to fear him. In October 1986, Long got her first full-time job at a thrift store. She married Patrick Mueggenborg in December 1986. In November 1987, Walling returned the children to their mother, Julie Long. But within a few weeks, Long's mother took the children for a visit with Walling and he refused to allow

them to return home. Walling admitted that he told Long to go to court to get visitation.

In May 1988, Long filed suit to gain custody of her children and to legally determine their paternity. In his answer, Walling asked for a divorce claiming that he and Long had entered into a common law marriage. The trial court determined that no common law marriage existed; that the daughter was not the child of Walling; and that custody of Long's two children should be placed with her. The Court of Appeals reversed and remanded. We have previously granted certiorari.

*Rath v. Maness,* 470 P.2d 1011, 1013 (Okla.1970), holds:

A common-law marriage requires competent parties, who enter the relationship by mutual agreement, exclusive of all others, consummating arrangement [sic] by cohabitation and open assumption of marital duties, and such relationship must be established by evidence that is clear and convincing. *Maxfield v. Maxfield,* Okl., 258 P.2d 915.[2]

The standard of appellate review is stated in *Daniels v. Mohon,* 350 P.2d 932 (Okla.1960). This Court held that where evidence is conflicting concerning the existence of a common law marriage, the trial court's judgment that no common law marriage had been effected would not be disturbed where such finding was not clearly

---

**1.** Plaintiff's exhibit number 2, shows Mueggenborg's birthdate as January 14, 1966. The document was signed by Mueggenborg certifying the information therein as correct.

**2.** Our reported cases are not consistent in their holdings concerning the necessity of consummation of the common law marriage by cohabitation *and* open assumption of marital duties. There is a line of cases of which *Quinton v. Webb,* 207 Okl. 133, 248 P.2d 586 (1952) is one. It holds:

There are jurisdictions in which it is held that if there is a valid agreement of marriage, in praesenti, cohabitation is not an essential element of a common law marriage, while other courts hold that assumption of the marital relation is an essential element. Oklahoma has followed the latter rule. *In re Trope's Estate,* [190 Okl. 453, 124 P.2d 733 (1942)] and cases therein cited.

*Quinton,* 248 P.2d at 589. There are other cases that hold that an element of common law marriage is consummation by cohabitation as man and wife *or* open mutual assumption of marital duties and obligations. *D.P. Greenwood Trucking Co. v. State Industrial Com'n,* 271 P.2d 339, 342 (Okla.1954). As an explanation for the requirement of cohabitation, *Quinton* comments:

In any event, it can be said that open and notorious cohabitation of the parties is evidentiary of a marriage agreement, other elements being present, while lack of such open cohabitation of the parties may be evidence tending to discredit the alleged agreement, thus casting upon the alleging party a greater burden in the actual proof of such agreement.

While this may serve as some explanation of the discrepancy in the cases, cohabitation is not an issue in the case at bar.

against the weight of the evidence. *Daniels*, 350 P.2d at 935.

■ The trial transcript reveals that the trial judge stated that he could not find any evidence of a common law marriage. At the hearing, Long consistently denied she was married to Walling. Although she testified that Walling had told her that he had been married before to Susan Smith, the alleged prior marriage was not mentioned by the trial court as persuasive to its judgment. The trial court found that Long was underage at the time Walling claimed that they had agreed to be married. Although Walling had introduced Long as his wife, Walling admitted that in 1987 he filed his income tax return as single. Walling had the burden of proving the common law marriage by clear and convincing evidence. *Rath*, 470 P.2d at 1013. The trial court findings indicate that he believed that the elements of competence and mutuality of agreement, requirements to validate a common law marriage as listed in *Rath*, were missing and therefore no common law marriage could exist. Although the evidence is conflicting concerning the existence of a common law marriage between Long and Walling, the finding of the trial court is not clearly against the weight of that evidence.[3] Accordingly, the judgment of the trial court regarding Walling's failure to prove a common law marriage will not be disturbed.

■ Walling additionally appeals the award of custody of the two children to Long. Custody contests are of equitable cognizance and while an appellate court may examine and weigh the evidence, the findings and decree of the trial court cannot be disturbed unless found to be against the clear weight of the evidence. *Carpenter v. Carpenter*, 645 P.2d 476, 480 (Okla.1982). Much of Walling's argument is based upon the false assumption that a common law marriage existed between the parties and the law cited in his brief applies

to married parties. Although evidence was presented that Walling was the primary caretaker of the children during most of their lives, evidence was also presented that the children were left with Walling through his use of intimidation, deceit and physical force. The trial court is entitled to choose which testimony to believe as the judge has the advantage over this Court in observing the behavior and demeanor of the witnesses. The court's judgment need not rest upon uncontradicted evidence. *Carpenter*, 645 P.2d at 480.

■ Concerning the daughter, the trial court found that no common law marriage existed and that the genetic evidence provided to the court by the Sylvan N. Goldman Center Oklahoma Blood Institute, revealed that Walling was excluded as the biological father of the young girl. "The mother of an illegitimate unmarried minor is entitled to its custody, services and earnings." 10 O.S.1991, § 6, *Plunkett v. Atkins*, 371 P.2d 727, 729–730 (Okla.1962). The trial court properly granted custody to the mother.

■ Concerning the son born to Long and Walling, Walling argues that the trial court was predisposed to keeping the children together even though such would not be in the best interests of their son. Long answers with a citation from the trial transcript revealing that the trial court stated that it would place custody where the children would be best suited even if the result were separating the children. The law requires that the best interest of the child be the paramount consideration of the trial court. *Rice v. Rice*, 603 P.2d 1125, 1128 (Okla.1979). "The court's decision is presumed to include a finding favorable to the successful party upon every fact necessary to support it." *Carpenter*, 645 P.2d at 480. We presume that the trial court considered the best interests of the son of the parties, even though the court did not expressly

---

**3.** In *Lowe v. Hickory*, 176 Okl. 426, 55 P.2d 769, 770 (1936), this Court made the following observation concerning the trial court's determination that a common law marriage did not exist:

In checking the record in this case we are at once convinced of the wisdom of the rule which recognizes the fact that the trial judge who sees the witnesses, observes their demeanor, and hears their testimony, is in better position to judge as to the true facts than the appellate court making its review by an examination of the record.

use those words. The evidence reveals that the son of the parties and the daughter of Long have always been together. We find no abuse of the trial court's discretion in granting custody of the son to Long because that decision is not against the clear weight of the evidence.

CERTIORARI PREVIOUSLY GRANTED. OPINION OF THE COURT OF APPEALS VACATED. JUDGMENT OF THE TRIAL COURT AFFIRMED.

OPALA, C.J., and KAUGER, SUMMERS and WATT, JJ., concur.

HODGES, V.C.J., and LAVENDER, SIMMS and HARGRAVE, JJ., dissent.

OPALA, Chief Justice, concurring.

The court upholds today the *nisi prius* ruling that the parties to this appeal had not entered into a common-law marital relationship.[1] Although I accede to the court's judgment and concur in its pronouncement, I write separately to correct the faulty exposition of *common-law marriage* that crept into some of our extant jurisprudence. The significance of *cohabitation*[2] in the context of a common-law marriage has suffered from several decades of irreconcilably discordant jurisprudence.[3] This case presents an opportunity to reinfuse the body of our unwritten law[4] with the ancient lore that regards *cohabitation as not essential to achieving matrimonial status by common-law marriage.*

Common-law marriage has roots as far back as the 12th Century canon law.[5] Under the rules introduced by Pope Alexander III,[6] marriage could be contracted by *consent alone—sans* ecclesiastical ceremony, parental consent, or physical consummation—if the consent was "in the words of the present tense."[7] Under Oklahoma law, first pronounced in 1905, the same rule applies—a common-law marriage is contracted by *per verba de praesenti.*[8] *If a man and woman declare that they take each other as husband and wife, at the moment of their mutual consent, they are married.*[9] Early case law recognizes that the *vital point of inquiry* into the

---

1. A "common-law marriage" is more properly called a "pre-Tridentine canonical consensual marriage." Ancient canon law, which consisted of the decrees of the various popes was the basis of matrimonial law in England. Before the Council of Trent (Trident in Latin) in 1563 canon law required no ceremony or religious sacrament for a valid marriage. The canon and civil laws administered in the ecclesiastical courts of England were brought from England to this side of the Atlantic and have been received as a part of Oklahoma law. *Reaves v. Reaves,* 15 Okl. 240, 82 P. 490, 494 (1905).

2. Cohabitation means living together. WEBSTER'S NEW INTERNATIONAL DICTIONARY OF THE ENGLISH LANGUAGE, 520 (2nd Ed.1959). It *may* include but is *not* synonymous with sexual relations.

3. *Compare* the cases *infra* note 10 with those *infra* note 16.

4. The *unwritten law*—earlier known by its Latin designation of *lex non scripta regni Angliae*—is the non-statutory law of the kingdom of England and Wales, also called the common law, which originated from custom and judicial decisions. *McCormack v. Oklahoma Pub. Co.,* Okl., 613 P.2d 737, 740 (1980).

5. *See supra* note 1. For a discussion of the canonical theory of marriage, *see* 2 F. Pollock and F.W. Maitland, THE HISTORY OF ENGLISH LAW, 368–379 (Cambridge 1968).

·6. Canonists before Pope Alexander III considered marriage effected by the physical union of man and woman in carnal copulation. Since there could also be copulation without marriage, they decided a mental element was also necessary. They held that the marriage began by agreement but became complete and indissoluble once the agreement was sealed by a physical union. *This view was replaced by the later canon law that did away with the physical consummation requirement. See* J.H. Baker, AN INTRODUCTION TO ENGLISH LEGAL HISTORY, 391 (2d Ed.1979).

7. Such a bond was indissoluble and even before consummation would be upheld in preference to a subsequent church marriage with a different spouse. *See* J.H. Baker, AN INTRODUCTION TO ENGLISH LEGAL HISTORY, 546 (3rd Ed.1990).

8. *Per verba de praesenti* means literally "by words in the present tense." BLACK'S LAW DICTIONARY, 1031 (5th Ed.1987). In canon law this medieval Latin phrase means "words that make mutual consent immediately effective."

9. Marriage was, of course, a church sacrament, but the church accepted the civil law doctrine that marriage was in one aspect a contract, created by mutual consent. See M. Radin,

existence of a non-ceremonial marriage focuses on whether there was *mutual consent* of both parties to a *present or immediate assumption of the marital bond.* Repute and mutual holding out as husband and wife are merely *evidentiary* of the antecedent consent's reality.[10] Cohabitation is probative of a voluntary relationship which may be marital in character if mutual consent is *otherwise found* to have been present. Cohabitation *alone* is insufficient as proof of consent *per verba de praesenti.*[11]

Scattered cases that regard cohabitation as a prerequisite for a consensual non-ceremonial marriage [12] are clearly irreconcilable with the earlier correct exposition of common-law marriage.[13] The distorted gloss of latter years may stem from judicial misidentification of a *probative fact* with an *element of marriage itself.* The erroneous view may also have been influenced by excessive judicial fear that a status so important could be created so informally. The erroneous impression that physical consummation is essential to matrimony without ceremony may have contributed to the confusion.[14]

Cohabitation is not a necessary element of a common-law marriage. It *cannot validate* a bond that falls short of the legal mark because of want of mutual consent. *Consensus, non concubitus, facit matrimonium.*[15]

I would today *overrule* the distortions scattered throughout our case law and excise from its corpus references to cohabitation as a prerequisite for a common-law marriage.[16] All opinions in conflict with

---

HANDBOOK OF ANGLO-AMERICAN LEGAL HISTORY, 504–505 (West 1936).

**10.** For an eloquent history of the common-law marriage and an explanation of how the concept came to be adopted in Oklahoma, *see Reaves, supra* note 1. For our early jurisprudence that correctly defines the elements of consensual non-ceremonial marriage, *see also Allen v. Smith,* 177 Okl. 605, 61 P.2d 564 (Syllabus 2) (1936); *Richard v. Richard,* 172 Okl. 397, 45 P.2d 101 (Syllabus 2) (1935); *Gustin v. Carshall,* 156 Okl. 173, 10 P.2d 250 (Syllabus 5) (1932); *Tiuna v. Willmott,* 162 Okl 42, 19 P.2d 145 (Syllabus 1) (1933); *Fisher v. Fisher,* 116 Okl. 129, 243 P. 730 (1926); *Mudd v. Perry,* 108 Okl. 168, 235 P. 479, 482 (1925); *Horrigan v. Gibson,* 87 Okl. 1, 206 P. 219, 221 (1922).

**11.** *See supra* note 8 for the definition of *per verba de praesenti.*

**12.** The court distinguishes today cases that consider cohabitation an essential element, *e.g., Rath, infra* note 16 at 1013, from those that consider cohabitation *or* assumption of marital duties essential for a common-law marriage, e.g., *Greenwood, infra* note 16 at 342. A recent case requires "exclusive relationship, proved by cohabitation" for a common-law marriage. *Matter of Estate of Stinchcomb, infra* note 16 at 29. In my view cases that require cohabitation *and* open assumption of marital duties are no different from those which require cohabitation *or* open assumption of marital duties or some other unnecessary element. All of those cases fail to recognize that cohabitation is merely *probative of a voluntary relationship which may be marital in character if mutual consent is otherwise found to have been present.*

**13.** *Compare* the cases *supra* note 10 with those *infra* note 16.

**14.** *See Reaves, supra* note 1 for the correct exposition of common-law marriage.

**15.** Consent, *and not cohabitation,* constitutes marriage. BLACK'S LAW DICTIONARY, 276 (5th Ed. 1979).

**16.** Following is a non-exhaustive list of Oklahoma cases that appear to consider cohabitation an *essential element* of a common-law marriage:
*Matter of Estate of Stinchcomb,* Okl., 674 P.2d 26, 29 (1983);
*Rath v. Maness,* Okl., 470 P.2d 1011, 1013 (1970);
*Daniels v. Mohon,* Okl., 350 P.2d 932, 935 (1960);
*D.P. Greenwood Trucking Co. v. State Industrial Com'n,* Okl., 271 P.2d 339, 342 (1954);
*Maxfield v. Maxfield,* Okl., 258 P.2d 915, 921 (Syllabus 2) (1953);
*Quinton v. Webb,* 207 Okl. 133, 248 P.2d 586, 589 (1952);
*Ridgeway v. Logan,* 205 Okl. 603, 239 P.2d 778, 782 (1952);
*In re Blackhawk's Estate,* 195 Okl. 390, 158 P.2d 168 (Syllabus 1) (1945);
*Aurand v. Aurand,* 195 Okl. 643, 161 P.2d 857 (1945);
*Vann v. Vann,* 186 Okl. 42, 96 P.2d 76, 77 (1939);
*In re Graham's Estate,* 169 Okl. 568, 37 P.2d 964 (1934);
*Baker v. Jack,* 112 Okl. 142, 241 P. 478, 480 (1925);
*Bothwell v. Way,* 44 Okl. 555, 145 P. 350, 351 (1915);
*Estate of Phifer,* 629 P.2d 808, 809 (Okl.App. 1981);

*Reaves* [17] should be regarded as an incorrect exposition of the ancient canonical doctrine still effective in Oklahoma today as part of our common law.[18]

---

*Estate of Bouse*, 583 P.2d 514, 517 (Okl.App. 1978);
*Dowell v. Welch*, 574 P.2d 1089, 1091 (Okl. App.1978);
*Matter of Estate of Rogers*, 569 P.2d 536, 539 (Okl.App.1977).
The Court of Criminal Appeals of Oklahoma may want to take note of the following cases that appear to consider cohabitation an essential element of a common-law marriage:
*Blake v. State*, 765 P.2d 1224, 1225 (Okl.Cr. 1988);
*Marshall v. State*, 537 P.2d 423 (Okl.Cr.1975);
*Fulbright v. State*, 508 P.2d 688, 693 (Okl.Cr. 1973);
*Vaughn v. State*, 489 P.2d 507 (Okl.Cr.1971);
*McKee v. State*, 452 P.2d 169, 172 (Okl.Cr. 1969);

*Wheaton v. State*, 85 Okl.Cr. 132, 185 P.2d 931 (1947);
*Chapman v. State*, 84 Okl.Cr. 41, 178 P.2d 638, 640 (1947).

**17.** *Reaves, supra* note 1.

**18.** The provisions of 12 O.S.1991 § 2 are:
"*The common law,* as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, *shall remain in force* in aid of the general statutes of Oklahoma; but the rule of the common law, that statutes in derogation thereof, shall be strictly construed, shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object." [Emphasis mine.]