1997 OK CIV APP 67

**Herbert Dwain SANDERS,
Defendants/Appellees,**

v.

**Nancy Dyson SANDERS,
Plaintiff/Appellant.**

**No. 87554.**

Court of Civil Appeals of Oklahoma,
Division No. 3.

Sept. 26, 1997.

Monte W. Strout, Tahlequah, for Plaintiff/Appellant.

Robert Locke, Muskogee, for Defendants/Appellees.

## MEMORANDUM OPINION

CARL B. JONES, Presiding Judge.

¶1 The only issue presented in this case is whether the trial court erred in finding that Appellant and Appellee's decedent did not have a common law marriage at the time of Decedent's death. Appellant, Nancy Dyson Sanders, argues this decision was against the clear weight of the evidence.

¶2 Our Supreme Court's most recent decision concerning common law marriages is *Mueggenborg v. Walling*, 1992 OK 112, 836 P.2d 112, which, quoting from *Rath v. Maness*, 470 P.2d 1011, 1013 (Okla.1970) sets outs the elements necessary to establish a common law marriage.

> "A common-law marriage requires competent parties, who enter the relationship by mutual agreement, exclusive of all others, consummating arrangement [sic] by cohabitation and open assumption of marital duties, and such relationship must be established by evidence that is clear and convincing. *Maxfield v. Maxfield*, Okl. 258 P.2d 915."

*Mueggenborg*, supra, at 113. *Mueggenborg* goes on to state that "... where evidence is conflicting concerning the existence of a common law marriage, the trial court's judgment that no common law marriage had been effected would not be disturbed where such finding was not clearly against the weight of the evidence." *Id.*; *Daniels v. Mohon*, 350 P.2d 932, 935 (Okla.1960).

¶3 Nancy Dyson Sanders and Herb Sanders were ceremonially married on June 24, 1993. On October 20, 1993, Herb filed a Petition for Annulment of the marriage alleging that he was incapable of understanding and contracting for the marriage. The matter was uncontested and a Decree of Annulment was entered on December 22, 1993. Appellant states that the real reason for the annulment was to protect her assets from the IRS with whom Herb was having some problems.

¶4 Herb Sanders was hospitalized on February 28, 1994. He was still in the hospital on March 10, 1994, when he died from his illness. On March 18, 1994, Herb's grown daughter from a previous marriage, the Appellee, Brooke Sanders, was appointed Special Administratrix for the purpose of conducting Herb's marina business. Thereafter, both Herb's daughter, Brooke, and Appellant filed Petitions for Letters of Administration. Appellant sought to be appointed on the basis that notwithstanding the Decree of Annulment, she and Herb had been living together in a common law marriage since the annulment and until the time of his death.

¶5 In June, 1995, Appellant filed a Motion to Vacate the Decree of Annulment. That matter was consolidated with the probate case where the other issues were pending. According to the court's final order entered after trial, Appellant's Motion to Vacate the Decree of Annulment was denied. The trial court concluded that Appellant failed to prove the existence of a common law marriage by clear and convincing evidence and that she was not Herb's surviving spouse.

¶6 The evidence was certainly conflicting in this case. Appellant stressed the facts that following the annulment her relationship with Herb did not change and they continued to cohabitate. She stayed with Herb at the hospital until his death. She slept in his hospital room and they even made love in the hospital. When a minister came to the hospital to visit, Herb introduced Appellant to him and referred to her as his wife. On March 4, 1994, when Herb was in the hospital and quite ill, he signed a state-

ment declaring his wishes as to who should have custody of his two minor sons in the event of his death. In that statement he referred to Appellant as his wife. This statement was written at Herb's request by one of two co-workers of Appellant who came to the hospital to witness the execution of this document. Appellant testified that at the time of Herb's death, she considered Herb to be her husband. She also denied having a personal or sexual relationship with any other man during the time she was married to Herb.

¶ 7 The Appellee, Brooke Sanders, the Personal Representative of Herb's estate, stresses evidence disproving the common law marriage elements of exclusivity and mutuality. As to the lack of exclusivity, there was evidence that Appellant had a lover, Mr. Cobb, with whom she had sex during her marriage to Herb, and regularly, three to four times per week, after the annulment and during the purported common law marriage. Appellant and Mr. Cobb took a trip to Mexico with another couple, in February, 1994, and stayed together in motel rooms. There was evidence that they had a fight on February 28, 1994, but got back together a month later after Herb died. They married in May, 1994, and are now divorced.

¶ 8 Regarding the mutuality requirement, there was evidence that neither Appellant nor Herb considered themselves to be married at or prior to the time of Herb's death. While Herb was in the hospital after being diagnosed terminally ill, attorney, Harry Scofous, had a conversation with Appellant about Herb. She was concerned about what to do and who should be making decisions. Her concern according to Mr. Scofous was that she had no decision making authority over him because she was not his wife. She even asked him if he would help her claim that she was his wife. Mr. Scofous also testified that Herb told him he and Appellant did not have a common law marriage.

¶ 9 Attorney, Tim Baker, testified that after Herb's death Appellant came to his office seeking a copy of Herb's death certificate. He told her that she was not his spouse or even a relative. She replied, "I know. Thank you, I just thought I would ask." Mr. Baker also told about a call he received from Herb while Herb was in the hospital two or three days before he died. Herb wanted to sue Appellant over a BMW automobile and over the transfer of some money.

¶ 10 Another witness, a friend of Herb's, testified that Herb called her from the hospital several days after being admitted and said that Appellant wanted him to marry her but that he was not going to. A dentist, Dr. Grubbs, testified that while visiting with Appellant at the hospital prior to Herb's death, she acknowledged that she and Herb were not married. Dr. Grubbs also testified that prior to Herb's admission to the hospital, Herb and Appellant were not living together.

■ ¶ 11 The credibility of the witnesses, especially Appellant and Mr. Cobb, was severely challenged. However, in a case of equitable cognizance it is for the trial court to determine the credibility of witnesses and the weight and value to be given their testimony. *Estate of Gerard v. Gerard,* 1995 OK 144, 911 P.2d 266, 270. The responsibility of this Court is to review the record and determine if the decision of the trial court was clearly against the weight of the evidence. We have done so and find the decision below not to be clearly against the weight of the evidence.

¶ 12 AFFIRMED.

ADAMS, C.J., and GARRETT, J., concur.