OSCN Found Document:IN THE MATTER OF THE GUARDIANSHIP OF L.R.M.

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 IN THE MATTER OF THE GUARDIANSHIP OF L.R.M.
2023 OK CIV APP 31
Case Number: 120831
Decided: 08/29/2023
Mandate Issued: 09/21/2023
DIVISION II
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION II

Cite as: 2023 OK CIV APP 31, __ P.3d __

 

IN THE MATTER OF THE GUARDIANSHIP OF L.R.M., A MINOR CHILD, and R.A.M., A MINOR CHILD,

DAVID RICHARDSON, DONNA RICHARDSON, Maternal Grandparents, Co-Guardians of R.A.M., Emergency Co-Guardians of L.R.M., Appellants,
v.
CIERRA MIDDLETON, Mother of L.R.M. and R.A.M., Appellee.

APPEAL FROM THE DISTRICT COURT OF
MARSHALL COUNTY, OKLAHOMA

HONORABLE GREGORY L. JOHNSON, TRIAL JUDGE

AFFIRMED

MaryGaye LeBoeuf, Oklahoma City, Oklahoma, for Appellants

Mary E. (Betsy) Clark, Madill, Oklahoma, for Appellee

STACIE L. HIXON, JUDGE:

¶1 David Richardson and Donna Richardson (collectively "Grandparents"), co-guardians of R.A.M. and emergency co-guardians of L.R.M., appeal the trial court's October 6, 2022 order denying their motion to disqualify Mary Clark as the attorney for their daughter, Cierra Middleton ("Mother"). The crux of the issue is whether the evidence presented at the hearing showed Clark lacked confidential information material to the present case, despite working in a law firm with Eric Jones, a deceased lawyer who represented Grandparents against Mother in the initial guardianship proceedings, and despite being responsible for disposing of his files after his death. Based on our careful review of the record and applicable law, we affirm the trial court's order.

BACKGROUND

¶2 In August 2017, Grandparents filed their petition seeking a guardianship over R.A.M. in Marshall County Case No. PG-2017-09. Mother contested the guardianship. After a two-day trial, Grandparents were appointed as the child's co-guardians, and the order appointing them as co-guardians was filed in August 2017. During these proceedings, Grandparents were represented by an attorney, Eric Jones, and Mother was pro se. Jones also represented Grandparents at a review hearing held approximately six months later in February 2018. The Summary Order of the review hearing states no further review hearings were set unless set by application of the parties.

¶3 Jones died several years later in January 2022. About six months after his death, in June 2022, Grandparents sought and obtained an emergency guardianship over Mother's other child, L.R.M., and filed a petition for a permanent guardianship in Marshall Co. Case No. PG-2022-09. Mother, represented by Clark, contested the guardianship being entered over L.R.M. and also sought to terminate the guardianship over R.A.M.

¶4 Grandparents then filed a motion to disqualify Clark as Mother's counsel based on a conflict of interest. They asserted that Jones and Clark were law partners before his death and alleged Clark had access to confidential materials contained in their file from the guardianship case involving R.A.M. In response, Clark filed an affidavit stating she had never seen the file, had not learned anything about the case from anyone other than Mother, and was not aware Jones had previously represented Grandparents.

¶5 The trial court held an evidentiary hearing on Grandparents' motion on October 3, 2022. The evidence at the hearing focused on whether Jones and Clark were associated together in a law firm, and whether Clark had access to the file on the initial guardianship proceeding involving R.A.M. After hearing the conflicting evidence presented at the hearing, the trial court found that though Jones and Clark were associated in the same law firm, Clark did not gain knowledge of any material or confidential information that would jeopardize the integrity of the judicial process. Accordingly, the court denied Grandparents' motion to disqualify, and the order was filed on October 6, 2022. Grandparents appeal.

STANDARD OF REVIEW

¶6 The denial of a motion to disqualify is immediately appealable as a final order because it affects the substantial rights of a party. Bd. of County Comm'rs v. Assoc. of County Commissioners of Oklahoma Self-Insured Group, 2021 OK 15, ¶ 9, 485 P.3d 234. When reviewing the order, we review the trial court's findings of fact for clear error and carefully examine de novo the trial court's application of ethical standards. Id. The standard for disqualifying counsel is whether real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. Id. This is a high standard to meet, and the burden rests with the moving party to establish the likelihood of harm by a preponderance of the evidence. Id.

ANALYSIS

¶7 Grandparents allege the trial court erred by denying their motion to disqualify Clark from representing Mother based on her access to confidential information by virtue of her association with Jones, their former lawyer in the guardianship case.[1] While we in no way endorse Clark's actions or consider them to be best practices, we cannot find there was clear error in the trial court's factual findings or that the court misapplied ethical standards, as required to reverse the court's decision.

¶8 The Oklahoma Supreme Court recognizes that a party in a civil proceeding has a fundamental right to employ and be heard by counsel of his or her own choosing. Arkansas Valley State Bank v. Phillips, 2007 OK 78, ¶ 12, 171 P.3d 899. This right is not absolute and may be set aside under limited circumstances, where honoring the litigant's choice would threaten the integrity of the judicial process. Id. at ¶ 13. The Court has acknowledged that other jurisdictions use various differing tests to review a motion to disqualify counsel, some of which require a lesser showing by the moving party than others. Id. at ¶ 17. However, the Court has placed a heavy burden on the party moving for disqualification to show by a preponderance of the evidence that real harm to the integrity of the judicial process is likely to result if counsel is not disqualified. Id. at ¶ 25.

¶9 In cases where a party is seeking disqualification based on an alleged conflict of interest or improper possession of confidential information after holding an evidentiary hearing, the trial court must make a specific factual finding in its order either requiring or denying disqualification, that the attorney either had, or did not have, knowledge of material and confidential information. See id. at ¶ 25; Miami Bus. Servs., LLC v. Davis, 2013 OK 20, ¶ 24, 299 P.3d 477. The Court has specifically stated that an appearance of impropriety alone is insufficient to prove disqualification, and in regard to confidential information, "[p]ropinquity does not equal knowledge." Bd. of County Comm'rs, 2021 OK 15, ¶ 25; see also Arkansas Valley State Bank, 2007 OK 78, ¶ 22.

¶10 In Board of County Comm'rs, 2021 OK 15, the Supreme Court considered whether the trial court properly denied a motion for disqualification of a lawyer and his law firm when the lawyer had formerly represented the moving party (an organizational client) in a case the movants alleged was substantially similar to the current cause.[2] Under Rule 1.9(b) of the Oklahoma Rules of Professional Conduct, 5 O.S.2021 Ch. 1, App. 3-A, absent informed written consent, a lawyer shall not knowingly represent a client in the "same or a substantially related matter" in which a firm with which the lawyer was formerly associated had previously represented a client "(1) whose interests are materially adverse to that person; and (2) about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter[.]" (emphasis added).

¶11 The Court found the matters were "similar." Id. at ¶ 21. However, disqualification was not proper because the evidence at the hearing showed the lawyer only had access to general information about the former client's policies and not any knowledge of specific facts that would preclude representation. Id. at ¶ 24. Specifically, the lawyer testified that he had: 1) never met with the former client, other than one lunch meeting he attended with a firm partner; 2) never obtained any confidential information or had any personal recollection of any; 3) never met any of the former client's employees; and 4) never participated in settlement conferences or depositions. Id. at ¶ 23. The partner of the lawyer's prior law firm, who also formerly represented the client, testified that the lawyer obtained no confidential information from the work he did with the former client. Id. In view of this evidence, the Court found the trial court's denial of the disqualification was not clear error and affirmed the trial court's decision.[3] Id. at ¶¶ 23, 25.

¶12 The present case also implicates Rule 1.9(b) of the Oklahoma Rules of Professional Conduct. At the hearing, it was undisputed that Clark was now representing Mother, whose interests are materially adverse to Grandparents, and that Jones previously represented Grandparents in the same and a substantially related matter.[4] It was also undisputed that Grandparents had not given written informed consent for Clark's representation of Mother. Rather, the issues were whether Clark had been associated with Jones's firm and had acquired confidential information material to the matter.[5]

¶13 Briefly, in regard to whether Jones and Clark were associated in a law firm, Clark maintained that though she and Jones worked in the same office, they were not "partners" in the firm.[6] She alleged they did not share funds and did not share staff, although one of Jones's staff members admittedly answered the phones. However, Grandparents presented evidence that Jones took out an advertisement in a local newspaper announcing that he had "expanded his office" and "has associated" with Clark. In fact, Jones's obituary was admitted into evidence, and it states that Clark was his "law partner and significant other." Clark admitted that she co-wrote the obituary, that it was published with her approval, and that she "st[ood] by this obituary 100 percent." Given such evidence, the trial court found Clark and Jones were "associated with the same law firm" but ultimately determined disqualification was not required because it found Clark had not gained knowledge of any material and confidential information that would jeopardize the integrity of the judicial process. Thus, the issue on appeal is whether the trial court erred by not requiring disqualification based on its finding that Clark had not gained knowledge of any material and confidential information that would jeopardize the integrity of the judicial process.

¶14 At the hearing, Ms. Richardson testified she was concerned about Clark representing Mother because Jones and Clark were associated in the same law office, and Clark would have had access to Grandparents' file, which would have contained confidential information. However, Clark presented evidence that she had not viewed the file and did not learn anything about the case at the time she was associated with Jones. Significantly, Clark testified that she did not begin working at the law firm until mid-2020, which was after the guardianship over R.A.M. was entered in 2017 and after the review hearing in 2018. Kimberly Johnson, Clark's legal assistant, testified that Clark lacked first-hand knowledge of Jones's private clients (such as Grandparents), and that Clark only helped Jones with his OIDS clients. Johnson also testified that she never saw Clark go into Jones's files and start reading old cases and that Clark never expressed an interest in doing so. Furthermore, Clark testified that when she was helping Jones at home after work due to his illness, they did not talk about work as she was focused on making him comfortable and getting him to bed. She further testified that she had never heard of Grandparents until Mother came to her office seeking legal assistance.

¶15 Clark also presented evidence that she did not currently possess Grandparents' file, though she was admittedly the person tasked with disposing of Jones's files after his death. Johnson testified that after Jones's death, the landlord notified Clark that she needed to sign a lease for the office space in her name if she planned on staying there. Instead, Clark moved to a different office space because Jones's files were so unorganized and "all over the place." Johnson testified they were under a time crunch, and they moved about 50 boxes of files to a lawyer named Brett Morton's office. Johnson testified that other files were supposed to be destroyed but were erroneously placed in a trash can, resulting in the Oklahoma Bar Association (OBA) retrieving the files and destroying them.[7] Johnson testified that only Clark's files were maintained in Clark's current storage facilities. Johnson also testified that Clark did not take any of Jones's private clients, such as Grandparents. From this record, it is impossible to tell the exact fate of Grandparents' file. The trial court, however, found Johnson's and Clark's testimony, which indicated Clark learned nothing about Grandparents' case at the time she was associated with Jones and that she did not currently possess the file, to be credible. We defer to the trial court's credibility determinations because the trial judge is in the best position to observe the behavior and demeanor of the witnesses and to gauge their credibility. See Mueggenborg v. Walling, 1992 OK 121, ¶ 7, 836 P.2d 112.

¶16 The evidence Clark presented at the hearing to show her lack of knowledge of confidential information was similar to the attorney's testimony in Board of County Comm'rs, 2021 OK 15. Clark's evidence also importantly showed she was not associated with Jones at the time the initial guardianship proceeding was actively ongoing. Regardless, like in Board of County Comm'rs, the trial court in this case accurately described this cause as "extremely troubling" and stated that it "doesn't look good."[8] We also question how litigants in Grandparents' position, whose original lawyer worked in a two-person law firm (with the other lawyer being his significant other), could be expected to provide evidence refuting the surviving lawyer's claim that she learned no confidential information and no longer had the file, when the surviving lawyer opts to later represent the opposing party in the same or substantially related matter. We believe the best practice in this unique situation would be to simply decline the representation.[9]

¶17 In this case, however, the trial court found Clark's and Johnson's testimony averring a lack of knowledge of confidential information was credible, and by carefully following Supreme Court precedent, found disqualification was improper because Grandparents' evidence fell short of showing Clark gained knowledge of any material and confidential information that would jeopardize the integrity of the judicial process. We are also duty bound to follow Supreme Court precedent and to defer to the trial court's credibility determinations.

¶18 Accordingly, based on the evidence presented at the hearing, we find the trial court did not commit clear error by not requiring disqualification, and therefore, we affirm the court's order filed October 6, 2022.

¶19 AFFIRMED.

BARNES, V.C.J., and WISEMAN, P.J., concur.

FOOTNOTES

[1] Grandparents also alleged that prior to initiating the present proceedings, Ms. Richardson called Clark's office and spoke to her legal assistant, Kimberly Johnson. They intended to rehire Jones to represent them in obtaining guardianship over L.R.M., not knowing he was deceased. Upon learning about his death, Ms. Richardson inquired whether Clark could represent them and disclosed facts about the case to Johnson. However, Mother had already consulted with Clark before this phone call. Neither Johnson nor Clark ever told Grandparents a conflict existed due to Clark's representation of Mother. Rather, Johnson testified she recognized Ms. Richardson's name at the end of the call, and then immediately called Mother to confirm Ms. Richardson was her Mother. We are confused as to why Johnson called Mother, which could have potentially tipped her off that Grandparents were about to re-initiate guardianship proceedings (the timing of which could have been crucial), as opposed to simply confirming this fact with Ms. Richardson. Regardless, although Grandparents include these facts in their Summary of the Case portion of their brief-in-chief, they do not provide any argument or authority on why these facts required disqualification. Thus, we do not consider this issue. See Okla. Sup. Ct. R. 1.11(k).

[2] The Court retained the case.

[3] The Court also found that because the lawyer was not subject to disqualification due to his lack of confidential information, neither was his current law firm. Id. at ¶ 24.

[4] Again, Mother sought termination of the guardianship over R.A.M., and Grandparents sought to maintain that guardianship and also to impose one over L.R.M.

[5] Rather than filing a proper response to the petition-in-error or an answer brief that includes citation to the record and legal authority, in accordance with the Rules of the Oklahoma Supreme Court, Clark has filed affidavits attempting to supplement the record to include additional facts. We admonish Clark for improperly attempting to supplement the appellate record and do not consider any facts in her affidavits filed on appeal that were not before the trial court when reaching its decision.

[6] Notably, based on its plain language, Rule 1.9(b) does not apply exclusively to lawyers who have been partners in a law firm but to those who were formerly "associated" in a firm.

[7] During Clark's cross-examination of Ms. Richardson, her questioning indicated the file was over five years old and was ultimately destroyed by the OBA. However, Clark never testified, or provided any other evidence, to show this occurred. We also note that given Jones attended a review hearing in the guardianship proceedings in February 2018, the file would not have been five years old either around the time of Jones's death in January 2022 or at the evidentiary hearing on the motion to disqualify in October 2022.

[8] It is also troubling that during the hearing, Clark did not appear to comprehend why Grandparents might have a legitimate concern regarding her access to their file.

[9] The record shows Clark mistakenly believed that if she was required to disqualify in this case, she would be required to disqualify from representing any client Jones had previously represented. Obviously, this is inaccurate. The issue here derives from Clark's decision to represent a different client whose interests were materially adverse to Jones's former clients in the same or substantially related proceeding, rather than from Clark representing one of Jones's former clients.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1992 OK 121, 836 P.2d 112, 63 OBJ 2315, 
Mueggenborg v. Walling
Discussed

 
2007 OK 78, 171 P.3d 899, 
ARKANSAS VALLEY STATE BANK v. PHILLIPS
Discussed at Length

 
2013 OK 20, 299 P.3d 477, 
MIAMI BUSINESS SERVICES, LLC v. DAVIS
Discussed

 
2021 OK 15, 485 P.3d 234, 
BD. OF COUNTY COMM'RS v. ASSOC. OF COUNTY COMM'RS OF OKLA. SELF-INSURED GROUP
Discussed at Length

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA